The Law Office of Ryan Lozar, P.C.
305 Broadway, 10th Floor, New York, NY 10007
Tel: (310) 867-1562; Alternate Tel: (646) 666-8262; Fax (877) 666-4456
ryanlozar@gmail.com
www.ryanlozar.com/www.luchaportusderechos.com



AUGUST 28, 2016

Re:   Peeples v. City of N.Y., et al., No. 15 Civ. 6511 (JBW) (PK)

Dear Judge Kuo:

I am Plaintiff's counsel in the above-captioned Section 1983 action.  I respectfully refer the Court to Plaintiff's amended complaint for background facts.  Docket No. 12.  I write to respectfully submit a letter motion asking the Court for an in-person conference to discuss Plaintiff's request that the Court compel Defendants to provide Plaintiff with discovery detailed in this letter and also to discuss complaint amendment.  The Parties have met and conferred regarding the issues in this letter and cannot reach agreement without the Court's intervention.

I.   **30(b)(6) Witness Deposition**

In this case, Plaintiff alleges that Defendants unlawfully arrested her for possessing an open container.  Defendants argue that even if that were true, they could have arrested Plaintiff for being in a park after dark.  Plaintiff disagrees and she has produced evidence showing that this is not the case, i.e., she has produced photographs relating to the lack of park-closure signage and Parks Department material indicating that the place where she was arrested was open twenty-four hours.  Defendants have responded by producing parks inspection reports showing that some parks-hours signage may have existed in one location or another at the time of the incident.

In order to understand these parks inspection reports, Plaintiff long ago served Defendants with notice that she would like to depose a 30(b)(6) witness from Defendant City's Parks Department.  Plaintiff was under the impression that this deposition was schedule to take place this week, the week of August 29, 2016.  Approximately one week ago, Defendants informed Plaintiff that they dispute her need for the 30(b)(6) witness's testimony.  As a result, Plaintiff makes this letter motion.

In brief, Plaintiff needs the 30(b)(6) witness to explain the inspection reports which are otherwise altogether unclear.  The reports use agency-specific terms like "routed signs" and "consolidated signs" that have no lay meaning.  In addition, although the reports discuss how many signs should be in a given park versus how many signs were observed there during inspection, the reports do not state where any of those signs actually existed or were supposed to exist.  This information is critical to Plaintiff's ability to convince a jury that Defendants' allegations about the adequacy of Astoria Houses signage are incredible.

For example, the Astoria Houses housing development boasts a multitude of common areas such as a kids' playground, a handball court, a basketball court, a baseball field, small plazas and a boardwalk.  The inspection reports are confusing to a layperson when one considers that the kids' playground, the handball court, the basketball court and the baseball field are all contained by a maze of chain-link fences with a multitude of access points between them.  Plaintiff is certain that a 30(b)(6) witness from

Defendant City's Parks Department would be able to make some sense out of this muddle by testifying about the layout of the common spaces generally, and intended sign locations more specifically.

Taking together the inspection reports, the 30(b)(6) witness's testimony about those records, Plaintiff's own productions, and party and non-party testimony, Plaintiff contends that she will be able to demonstrate that Defendants do not have any alternate justification for her arrest which would permit them to defeat her false-arrest claim. Yet Defendants argue that no 30(b)(6) conversation is permitted.

## II. Electronic Copies of the Disciplinary Files

At the last conference, the Court ordered Defendants to produce the underlying disciplinary files relating to the City's disciplinary actions taken against Individual Defendants. In order to save all Parties from unnecessary effort, after that conference, I offered to look through these files in the City's office and flag select material for production to save time and money for all involved.

On August 15, 2016, I made this visit and, out of thousands of pages of records, I asked Defendants to produce forty-two pages of material. Defendants informed me that the forty-two-page production would require me to first pay twenty-five cents per page. I wrote a check for the copies that day because I needed the material for a deposition the following morning. However, insofar as I dispute that Defendants can treat that as a taxable cost, particularly because I also agreed to electronic production of the forty-two pages, I ask that the Court clarify Plaintiff's obligations in this respect before additional document production (and related billing) occurs.

## III. Complaint Amendment

One final issue that Plaintiff would like to raise with the Court is complaint amendment. As the Court knows, fact discovery will close in this litigation next month. However, I do not believe that any of Plaintiff's proposed amendments would require additional fact discovery insofar as they all principally rest on the operative pleading's existing allegations as they have been developed in recent weeks by Defendants' production of records and depositions.[1] This new information supports Plaintiff's proposed first-amendment-retaliation, excessive-force and fabrication-of-evidence claims in a way that the preceding record did not so robustly allow, and that is the reason why Plaintiff argues that she now has cause to move for amendment.

I will briefly discuss these proposed claims below. But first, I would like to say that if the Court grants this letter motion to schedule a conference, Plaintiff respectfully proposes that she will do two things to ready the complaint-amendment discussion in advance of that date. First, she will informally share the Proposed Second Amended Complaint with Defendants. Second, she will file a letter with the Court stating Defendants' position relating to the same and append the Proposed Second Amended Complaint as an exhibit.

---

[1] Furthermore, Defendants have indicated to me that they will be seeking a one-month extension of fact discovery in a separate motion (Plaintiff consented to their request).

### a. First-Amendment-Retaliation and Excessive-Force Claims

Plaintiff's first-amendment-retaliation and excessive-force claims arise from the allegation, supported by Plaintiff's sworn testimony, as elicited by Defendants' counsel at her deposition, that Defendants' actions were motivated by their anger at Plaintiff and her friends (1) for asking why they were being harassed; (2) questioning the lawfulness of the stop and search; and (3) failing to act with complete deference toward the police with respect to what they perceived to be a wholly arbitrary stop.

It is beyond question that Plaintiff's and her friends' inquiries regarding the lawfulness of the police's actions are protected by the First Amendment. At her deposition, Plaintiff's testimony supported the claim that Defendants' unlawful mass arrest of the women was motivated by Defendants' upset at those inquiries. Among other things, Plaintiff testified that Defendants refused to answer the women's questions as to why Defendants were asking for their IDs and then reacted against them. In sum and substance, this is the basis of Plaintiff's first-amendment-retaliation claim.

Relatedly, Plaintiff testified at deposition that the encounter was so arbitrary that she continued to distract herself with her phone even as the encounter with the police continued. In response, Plaintiff testified that Defendant Ricciardi tried to snatch her phone by grabbing her wrist or hand hard for a few seconds and twisting her arm in the process, and that she was merely sitting on a bench at the time. According to Plaintiff, this hurt, and she did nothing to deserve it. In sum and substance, this is the basis of Plaintiff's proposed excessive-force claim.

### b. Fabrication-of-Evidence Claim

As for Plaintiff's fabrication-of-evidence claim, she contends that Defendants created false information when they swore certain allegations against her and forwarded them to the staff of the District Attorney's Office. The falsity of these allegations is clearest when compared against the allegations leveled against the five or six other women who were the subject of the mass arrest. The Defendants who have been deposed thus far, both of whom have testified that they made these accusatory statements, stated that although they did not conduct a prolonged surveillance operation with respect to the alleged mass open-container violations, they observed each of the women holding a 375 ml bottle of Hennessy with an open cap. It must have been a remarkable encounter. This claim stretches the limits of credulity and Plaintiff and her acquaintances deny it. They aver that as Defendants approached, all seven women were not simultaneously holding a 375 ml bottle of Hennessy with an open cap. Indeed, this is the crux of the complaint—that Defendants wrongfully imputed one woman's storage of a closed, small bottle of alcohol in her purse to all seven women to charge all with an open container violation.

## V. Conclusion

In light of the foregoing, Plaintiff respectfully requests a conference to discuss the 30(b)(6), taxable costs and complaint-amendment issues discussed herein.

Thank you,

Ryan Lozar