UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
KATRINA PEEPLES,

                      Plaintiff,

      -against-

CITY OF NEW YORK, et al.,

                      Defendants.

------------------------------------------------------------ x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

15cv6511 (JBW) (PK)

In this action, Plaintiff Katrina Peeples alleges various Section 1983 claims against Defendants City of New York, NYPD Sergeant Dennis Friendly, NYPD Officer Anthony Ricciardi, NYPD Officer Mikelang Zidor, and NYPD Officers John/Jane Does 1-5. Docket No. 12 (First Amended Complaint). For the following reasons, Ms. Peeples asks that the Court grant her leave to file a Second Amended Complaint adding claims and identifying one Defendant.

## I.    Brief Factual Background

The following facts are drawn from Plaintiff's allegations and, to the extent possible, from evidence in the record to date. On the evening of September 7, 2013, Ms. Peeples had dinner with her kids, who were fourteen and eleven at the time, in her apartment at 3-10 Astoria Boulevard in Astoria Houses, which is a NYCHA housing development. Exhibit A (excerpt from Peeples deposition). Ms. Peeples had made plans to meet her friends Taniqua and Tameka after dinner. The three women, all of whom had lived in Astoria Houses since they were little girls, had been friends for decades and this was a normal routine. Id.

Ms. Peeples, Taniqua and Tameka ran into a group of four other women that they knew—Joanna, Melissa, Ebony and Adaishia. The seven women near a bench, some sitting and some standing. The bench where the women were located was roughly 500 feet from the apartment building where Ms. Peeples lived, and Ms. Peeples and her friends often sat there. Exhibit B (overhead view showing Ms. Peeples's building 3-10 marked in blue and the bench marked in pen).

Defendant Sergeant Friendly, Defendant Officer Ricciardi and Defendant Officer Zidor, all of whom were patrolling Astoria Houses in a vehicle that evening, saw the women, stopped their vehicle and approached the women. As Defendants approached the women, they asked the women for their identifications. According to Defendants, they either saw the women drinking alcohol and that is what made them get out of the vehicle, or they were walking up to the women and this is when they noticed bottles. Compare Exhibit C (excerpt from Officer Zidor's deposition testimony), with Defendant Officer Ricciardi transcript (forthcoming) and Defendant Sergeant Friendly transcript (forthcoming). Later, Defendants would make sworn statements that collectively alleged that they observed every one of the women possessed an open 375-ml bottle of Hennessy in that moment. Exhibit D (five of the statements, the two others are the subject of outstanding discovery request).

The women deny that any of them were drinking, and it was for that reason that they did not understand Defendants' demand for their identifications and asked why Defendants were detaining them and demanding their identifications. Defendants refused to respond.

Ms. Peeples, who had been prepared to give her identification but stopped when her friends began to ask Defendants' basis for demanding it, was looking at her phone on a bench. According to Ms. Peeples, a Defendant who, on information and belief, was Officer Ricciardi

"tried to snatch [her] phone," then "tried to twist [her] arm," hurting her wrist in the process. Defendant Sergeant Friendly ordered Defendant Officer Ricciardi to handcuff Ms. Peeples, which he did. Exhibit E at 86.

Ms. Peeples testified that it was at this time that Defendants searched Joanna's purse and claimed to find a bottle of alcohol. Exhibit F at 93. According to Ms. Peeples, this is the only time that anything that could even arguably be construed as alcohol was made known to Defendants or the women. Whatever the thing that was taken from Joanna's purse was, it was thrown in the garbage or simply left on the baseball field. By this time, according to Ms. Peeples, roughly six other NYPD officers and multiple police vehicles were on the scene. Defendants handcuffed and arrested all seven women, and transported them to the precinct. Exhibit F at 9

At the precinct, as noted above, Defendants persisted in their implausible claim that taken together they collectively witnessed every woman in possession of a 375-ml bottle of Hennessy when they arrived at the scene. Exhibit D (Defendants collectively allege at a minimum that Ms. Peeples, Tameka, Taniqua, Joanna and Melissa were all seen in possession of an open 375-ml bottle of Hennessy); see, e.g., Exhibit G (excerpt from Defendant Officer Zidor's deposition testimony stating that the bottles were all the same thing—375-ml Hennessy). According to Defendant Sergeant Friendly, Defendants left all of these bottles on the baseball field. Defendant Officer Friendly transcript (forthcoming); Exhibit G (Defendant Officer Zidor stating that Defendants threw the bottles away). Despite this dubious claim that each woman had a bottle of this size, Desk Officer Stavros simply and unreasonably noted the incident in the log as the women were placed in cells as their summonses were written, and did not intervene to question the incredible report. Friendly transcript (forthcoming); Exhibit H.

A state court judge dismissed the open-container charge against Ms. Peeples. Exhibit I.

## II. Procedural History

On November 12, 2015, Ms. Peeples filed her Original Complaint. Docket No. 1. On April 14, 2014, she filed her First Amended Complaint in order to, among other things, name certain officers whose identities had come to light during discovery. Docket No. 12. Defendants answered. Docket Nos. 16, 22

Although the Parties are near to completing fact discovery, due to outstanding discovery and production disputes, the Court recently set a September 27, 2016, conference and will set a fact discovery deadline on that date. Docket Entry 9/6/2016.

On August 28, 2016, Plaintiff indicated her intent to seek pleading amendment in response to the development of facts over the course of discovery. Docket No. 26.

## III. Legal Standard

Motions to amend pleadings are generally governed by Rule 15(a) of the Federal Rules of Civil Procedure ("FRCP"), which provides that leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Despite the generally liberal granting of these motions,

> leave to amend may be denied for reasons such as delay, bad faith or dilatory motive of movant, futility of the amendment and prejudice. In exercising this discretion, courts consider whether the amendment will require the opposing party to expend significant resources in discovery and whether resolution of the dispute will be delayed. The Court may also deny leave to amend where there has been delay and no satisfactory explanation is offered for the delay.

EEOC v. Morgan Stanley & Co., Inc., 211 F.R.D. 225, 227 (S.D.N.Y. 2002) (citations & quotations omitted).

## IV. Analysis

### a. The New Claims

Assuming, arguendo, that the Court were to grant Plaintiff leave to file her Second Amended Complaint, the pretrial progress of this action would suffer no significant delay. It should be noted that fact discovery in this case was set to close in September, but due to the fact that disputes have arisen between the Parties has arisen as to outstanding document productions as well as Plaintiff's entitlement to a FRCP 30(b)(6) witness, the Court granted Defendants' recent consent motion to adjourn that September 2016 deadline. Docket No. 28; Docket Entry 9/6/2016. The Court indicated in the related Order that it would reset the fact discovery deadline at a September 26, 2016, conference to discuss the aforementioned disputes. Thus, Plaintiff's Second Amended Complaint would not delay fact discovery insofar as pretrial will remain open for at least another month at this writing.

Even if the fact discovery deadline were closer upon us, Plaintiff's Second Amended Complaint would occasion no serious delay. Plaintiff and all presently named Defendants have already been deposed and significant document production has been completed. Defendants have indicated that they may wish to convene non-party depositions but the Parties have discussed completing such proceedings in one day at the end of September. Furthermore, Plaintiff's motion is not made in bad faith or with dilatory motive. In fact, as explained above, and as I hope my citation to the evidentiary record shows, the timing of Plaintiff's motion relates to the emergence of additional facts about the incident during discovery.

Plaintiff's proposed claims are not futile. They are three: excessive force, First-Amendment retaliation, and fabrication of evidence.

First, Ms. Peeple's excessive force claim requires that she present facts permitting a jury to consider "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight," and compare the totality of those circumstances against the amount of force the Defendant Officer used against her to determine whether that force was "objectively reasonable . . . without regard to [the officer's] underlying intent or motivation." Graham v. City of N.Y., 928 F. Supp.2d 610, 617-18 (E.D.N.Y. 2013) (citations & quotations omitted). Here, Ms. Peeples's record shows that Defendants ultimately charged her and her friends with open-container violations, which is a relatively innocuous charge in the grand scheme of things. At the same time, Ms. Peeples posed no threat to the safety of anyone nor was she resisting arrest or attempting to evade arrest by flight at the time, as she was sitting on a bench looking at a telephone screen when the Defendant Officer grabbed her wrist and twisted it. Exhibit E. Thus, a reasonable jury could plausibly find on the case's present evidentiary record that the Defendant Officer's force upon Ms. Peeples was objectively unreasonable. See Nimkoff v. Dollhausen, 751 F. Supp.2d 455, 463 (E.D.N.Y. 2010) ("[T]he fact finder must consider the totality of the circumstances . . ." in weighing whether an officer's actions were objectively reasonable.).

Next, Ms. Peeples's First-Amendment retaliation claim requires allegations that (1) [s]he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by [her] exercise of that right; and (3) defendants' actions effectively chilled the exercise of [her] First Amendment right." Curley v. Vill. of Suffern, 268 F. 3d 65, 73 (2d Cir. 2001) (citing Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998)). Because Ms. Peeples testified that she joined the other women in stating that Defendants' call for their identifications

was an abuse of authority, and Defendants' response was to arrest all of the women en masse, effectively stopping the womens' speech immediately, Ms. Peeples argues that her First-Amendment retaliation claim is also one that would be properly put before a jury.[1]

Finally, as to Plaintiff's fabrication of evidence charge, "[a] person suffers a constitutional violation if an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." Jovanovic v. City of N.Y., 486 F. App'x 149, 152

---

[1] It should be noted that Defendants have argued that they learned that Ms. Peeples had alleged bench warrants when she was processed at the precinct and that as a result, Defendants sent Ms. Peeples onto Central Booking (requiring further incarceration) while the other women were released from the precinct with summonses. There are a few things interesting about this. First, although Defendants sent Ms. Peeples to Central Booking due to alleged warrants, the record shows that Defendants did not forward the necessary warrant paperwork to the D.A.'s Office. Exhibit J (Plaintiff's OLPA sheet, which frequently has notations about warrants on the second page, does not); Exhibit K (a Court Alerts Sheet has a specific place for Warrants, and the fields are conspicuously blank); Exhibit L (a Pre-Arraignment Notification Report with no mention of warrants but noting Defendant Officer Ricciardi's submission of the case using the Expedited Affidavit Program); Exhibit M (a copy of the Judge's Notes, a document which frequently has annotations about warrants, but none are mentioned here).

In addition, document production to date lacks certain key documents that Defendants would have had to prepare in order to alert the D.A.'s Office and/or the Court properly about the warrants. For example, NYPD Patrol Guide Provision Procedure No. 208-42 directs an arresting officer, who in this case was Defendant Officer Ricciardi, to prepare an Arrest Report Supplement. Exhibit N. At best Defendant Officer Ricciardi wrote warrant numbers down on the principal Arrest Report designed for Ms. Peeples's September 8, 2013, charge.

In sum, it has been learned in discovery that Ms. Peeples's warrants remain open to this day, tending to show that Defendants' eagerness to prolong Ms. Peeples's incarceration was not accompanied by necessary attention to the paperwork that would justify it. Ms. Peeples anticipates that Defendants will seek to cut off any potential false arrest damages starting the moment the warrants were discovered, but she questions whether the fact of the warrants' existence operates in this fashion when Defendants apparently made the decision—as evidenced by their not bothering to do the requisite paperwork—that they did not wish to have her answer for those warrants that evening. Assuming, arguendo, that the law did operate in this way, it would follow that upon Ms. Peeples's release from custody the next day, Defendants could re-arrest her on the outstanding warrants that they themselves took pains to keep open, then claim immunity as she went through the system all over again.

(2d Cir. 2012) (citing Jocks v. Tavernier, 316 F.3d 128, 138 (2d Cir. 2003)). As summarized in Section I, supra, Plaintiff has cited to facts which align with these elements and create a genuine issue of material fact as to the same. See Caravalho v. City of N.Y., No. 13 Civ. 4174 (PKC) (MHD), 2016 WL 4154273, at *2 (S.D.N.Y. July 29, 2016) (stating that "[t]he imposition of charges based on an allegedly false accusatory instrument satisfies, at the motion to dismiss stage, the requirement that false statements forwarded to a prosecutor cause 'a deprivation of liberty'") (citing Jovanovic, 486 F. App'x at 152).

### b. **The New Defendant**

One major problem during discovery in this action has been Defendants' inability or unwillingness to identify any of the Doe Defendant Officers beyond Defendant Sergeant Friendly, Defendant Officer Ricciardi, and Defendant Officer Zidor. Ms. Peeples testified that roughly six police officers eventually arrived on the scene, presumably to aid in the mass arrest. Exhibit F. Tameka and Taniqua, who testified about the incident in the year 2013 at 50-h hearings, said the same thing. Exhibit O. At this writing, Plaintiff still does not know any of these individuals' names. The production of roll call records and vehicle assignment records (both of which are the subject of an ongoing discovery dispute for hopeful discussion with the Court during the upcoming conference) would aid in these identifications.

However, one Doe Defendant has recently been at least partially identified, and that is Desk Officer Stavros, who failed to intervene to mitigate Defendant Sergeant Friendly, Defendant Officer Ricciardi and Defendant Officer Zidor's violation of Ms. Peeples's and the other women's rights by alleging all seven's simultaneous possession of a 375-ml bottle of Hennessy. In this action, of course, it is only Ms. Peeples who seeks a remedy for Defendants' false arrest of her and fabrication of evidence against her, but Defendants' and Proposed

Defendant Officer Stavros's intentional and indifferent processing of all seven women on the incredible charges contextualizes the violation of Ms. Peeples's rights.

A failure to intervene claim requires that an officer have had a realistic opportunity to intervene so as to prevent or stop the violation of Ms. Peeples's rights, yet did not take reasonable steps to intervene. See Jean-Laurent v. Wilkinson, 540 F. Supp.2d 501, 512 (S.D.N.Y. 2008). Here, Defendant Desk Officer Stavros did have such a reasonable opportunity to rein in Defendants' misconduct yet failed to take any such reasonable steps. Defendant Sergeant Friendly testified that Desk Officer is a supervisory role performed by an officer with rank of at least sergeant, and the NYPD Patrol Guide Procedure No. 209-06 directs Desk Officers that they may "NOT forward any summons returnable to Criminal Court if improperly prepared." Exhibit P (copy of NYPD PG 209-06) (emphasis in original); Defendant Sergeant Friendly transcript (forthcoming). It appears that Desk Officer Stavros paid no attention to the fact that Defendants' version of events supporting the mass arrest of the women did not made sense on its face. Finally, Ms. Peeples argues that it must have been unusual for Defendants to bring in seven women for the issuance of open-container summonses, yet Desk Officer Stavros appears not to have noticed. Defendant Sergeant Friendly testified that the women were brought in in order to protect them because Ms. Peeples's rowdy behavior was drawing a crowd, but this explanation makes little sense when one considers that Defendants placed all of the women in cells. On the record gathered to date, Desk Officer Stavros logged the womens' named into the Command Log but did not intervene to help mitigate the violation of their rights.

## V. Conclusion

In light of the foregoing, Ms. Peeples respectfully requests that the Court grant her leave to file the Proposed Second Amended Complaint which is appended as an exhibit to this memorandum of law and other materials relating to her motion to amend under FRCP 15.

Dated: September 7, 2016
New York, New York

Ryan Lozar
*Attorney for Plaintiff Katrina Peeples*
305 Broadway, 10th Floor
New York, New York 10007
(310) 867-1562