UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KATRINA PEEPLES, Plaintiff,

-against-

CITY OF NEW YORK, et al., Defendants.

REPLY IN SUPPORT OF
MOTION TO AMEND

15-cv-6511 (JBW) (PK)

I. The Excessive Force Claim Is Well Supported By Law And Fact

In Graham v. Connor, 490 U.S. 386, 396 (1989), the Supreme Court held that "whether the force used to effect a particular seizure is 'reasonable' . . . requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Applying this principle, the Second Circuit in Atkins v. City of New York, 143 F.3d 100, 104 (2d Cir. 1998), held that a police officer could not have "used reasonable force" against a plaintiff for whom there was no probable cause to arrest. See Black v. Town of Harrison, No. 02 Civ. 2097, 2002 WL 31002824, at *6 (S.D.N.Y. Sept. 5, 2002) (When arrest unlawful, "any degree of force is unreasonable and excessive."); Budgar v. State, 98 Misc. 2d 588, 592 (N.Y. Ct. of Claims, Mar. 8, 1979) ("Any use of force during . . . unlawful arrest is actionable.").

Defendants insist that excessive force claims fail as a matter of law whenever a plaintiff's force-related injuries are de minimis. This is not the law under Graham. In Lemmo v. McKoy, No. 08 Civ. 4264 (RJD), 2011 WL 843974, at *4 (E.D.N.Y. Mar. 8, 2011), this Court held that even though the plaintiff had not suffered notable injury when officers gratuitously twisted his thumbs (a fact which calls to mind Defendant's wrenching of Plaintiff's wrist here), "a jury, citizens of this city, should decide whether an officer or officers, sworn to protect and serve the community, failed to deliver on their professional vow" by using force without reason. See Atkins, 143 F.3d at 104 (noting that the degree of injury is relevant to damages, not liability); Budgar, 98 Misc. 2d at 592 (same).

5098046v5

In Milo v. City of New York, 59 F. Supp.3d 513, 527 (E.D.N.Y. 2014), which Defendants cite, the Court dismissed the plaintiff's false arrest claim because the police had probable cause, then dismissed her too-tight handcuffs claim, citing de minimis injuries. Defendants' reliance upon Milo is misplaced as applied to Ms. Peeples because Milo's dismissal of the force claim cannot be divorced from the dismissal of the arrest claim. Defendants argue that some physical coercion is a part of lawful custodial arrest, but this says nothing about so-called de minimis injury arising from unlawful arrest.

Here, in contrast to Milo, there is an issue of fact on Plaintiff's false arrest claim. See Best v. Nurse, No. 99 Civ. 3727 (JBW), 1999 WL 1243055, at *7 (E.D.N.Y. Dec. 16, 1999) (Judge Weinstein declining to dismiss the plaintiff's false arrest or excessive force claims, stating that until the false arrest claim was resolved, it was not possible to know "the objective reasonableness of the officers' conduct or the injury" for the purposes of the force analysis). More importantly, Milo is about an officer using handcuffs upon a person who committed an offense that society commonly understands to merit custodial arrest. In contrast, the instant case is about an officer wrenching a woman's wrist in a context that society commonly understands to merit a summons. If an officer is not able to point to discretionary factors justifying his extraordinary decision to take a summons recipient into custody (which, in addition to lack of probable cause in the first instance, is what Plaintiff alleges here), then Plaintiff argues that the officer cannot blithely claim free reign to harm a summons recipient so long as the officer keeps it to a minimum.

## II. The First Amendment Retaliation Claim Is Well Supported By Law And Fact

Plaintiff has created a record which can convince a reasonable jury to plausibly find that Defendants subjected her and her friends to retaliatory arrest because of her speech. See Reichle v. Howards, 132 S. Ct. 2088 (2012) (holding that there was a specific right to be free from retaliatory arrest that is otherwise unsupported by probable cause). Defendants fail to plausibly identify any reason for the mass arrest other than "summary punishment for [Plaintiff's] exercise of [her] constitutional rights." Estate of Morris ex rel. Morris v. Dapolito, 297 F. Supp.2d 680, 694 (S.D.N.Y.

2004); see also Anderson v. City of N.Y., 817 F. Supp.2d 77, 97 (E.D.N.Y. 2011) (collecting cases stating that "where defendants have not established probable cause for the arrest," "plaintiffs need not establish that their free speech rights were 'actually chilled' by defendants' actions"). Such "summary punishment" is specific objective harm to speech. Incidentally, the record also shows subjective harm to speech because when Defendants began to escalate the situation Plaintiff stopped questioning the abuse of authority and sat on the bench. Cf. Persaud v. McSorley, 275 F. Supp.2d 490, 495 (S.D.N.Y. 2003) (stating that the plaintiff's speech had not been chilled by officers because the plaintiff complained even after the officers issued the contested tickets). Finally, Plaintiff argues that because Defendants used the awesome power of the state to boast that police officers question the citizenry, but never vice versa, a jury could find an objective threat of specific future First Amendment harm.

Defendants argue that no reasonable person could interpret this as a retaliatory arrest because the women committed a violation of the law before Plaintiff's speech. Docket No. 31 (emphasis in original). Plaintiff respectfully disputes that that premise logically resolves this claim because she alleges that there was no violation of the law in the first instance. Furthermore, Plaintiff argues that it is an open question whether the police may arrest someone for her speech even if the arrest was otherwise supported by probable cause. See Reichle v. Howards, 132 S. Ct. 2088 (2012).

### III. The Fabrication-Of-Evidence Claim Is Well Supported By Law And Fact

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 150 (2d Cir. 1997). Whether the false information is admissible at trial is irrelevant to the claim. See Marom v. City of N.Y., No. 15 Civ. 2017 (PKC), Docket No. 66 (S.D.N.Y. July 19, 2016); Salazar v. City of N.Y., No. 15 Civ. 1989 (KF), 2016 WL 3748499, at *4 (S.D.N.Y. July 11, 2016) ("[W]hile an arrest report and criminal complaint might not be independently admissible at a criminal trial, they might nevertheless . . . be used as impeachment evidence that may affect the outcome of the trial.").

The fact that Plaintiff did not actually go to trial is of no moment. "[T]here is no requirement alleging fabrication of evidence actually go to trial based on that evidence." Salazar, 2016 WL 3748499, at *4. Just last week, in Garnett v. Undercover Officer C0039, -- F.3d --, 2016 WL 5496761, at *8 n.6 (2d Cir. Sept. 30, 2016), the Second Circuit arguably hinted at why this might be so, stating that it remains an open question whether a fair-trial claim "is rooted in the Sixth Amendment or Fifth and Fourteenth Amendments, or both[.]"

Next, Defendants accuse Plaintiff of being improperly "creative" in bringing the fair-trial claim because she would be unable to satisfy the elements of a malicious prosecution claim, but the police misconduct she and the other women experienced is precisely what the fair-trial constitutional claim is meant to address. Here, Defendants falsely and absurdly told prosecutors that each one of the seven women was caught tippling from her very own open 375-ml bottle of Hennessy. Even assuming, arguendo, that Defendants could, as they claim, convince a jury that they women were unlawfully in a park at the time, "[n]o arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee." Garnett, 2016 WL 5496761, at *7; see Coggins v. Buonara, 776 F.3d 108, 113 (2d Cir. 2015) (stating that an officer's false statements are actionable); Rucks v. City of N.Y., 96 F. Supp.3d 138, 149 (S.D.N.Y 2015) (rejecting that only fabricated physical evidence or confessions are actionable).

**IV.   Defendants Have Not Shown That The Amendment Will Cause Prejudice**

"The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the non-movant of prejudice or bad faith." AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 725 (2d Cir. 2010). Delay might suffice as prejudice if amendment requires "significant additional resources to conduct discovery and prepare for trial" or "significantly delay[s] the resolution of the dispute." Block v. First Blood Assoc., 9888 F.2d 344, 350 (2d Cir. 1993).

Defendants argue that the Court should hold them to a low burden of proof in showing prejudice. But insofar as Defendants show no prejudice at all, it does not matter whether the burden is

stringent or lenient. See Commander Oil Corp. v. Barlo Equip. Corp., 215 F.3d 321, 333 (2d Cir. 2000) (affirming that seven-year delay alone did not show prejudice). At best Defendants posit that amendment might require "discovery [to be] extended" or that "certain individuals might have to be deposed again." Docket No. 31. But these are "conclusory assertions," particularly here, where fact discovery remains open. See Moroughan v. Cty. of Suffolk, 99 F. Supp.3d 317, 324 (EDNY 2015); see State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 246 F.R.D. 143, 149 (E.D.N.Y. 2007) (finding that additional discovery "does not automatically constitute undue prejudice").

Defendants complain that Plaintiff timed her motion to be mindful of the statute of limitations. Assuming that Defendants mean that Plaintiff's adherence to the statute of limitations is prejudicial because they preferred the claims to expire, statute-of-limitations compliance is not the kind of prejudice meant or credited by FRCP 15.

Finally, courts have shown particular willingness to permit amendment when, as here, the proposed claims overlap with the pre-existing ones. See State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981) (affirming claim amendment after the close of discovery because "[t]he amended claim was obviously one of the objects of discovery and related closely to the original claim"). Consider Marinari v. Dunleavy, 86 F.R.D. 127, 129 (E.D.Pa. 1980), in which the court granted the plaintiff's post-discovery addition of a negligence claim to his pre-existing civil rights claims. The Marinari court said that the defendants appeared to argue that "because discovery was taken with a view towards a civil rights claim and not a negligence claim, they would be prejudiced in that they would need to review all past discovery and perhaps take new discovery." Id. The court disagreed that that was prejudice, stating that "[a]lthough [d]efendants may have to review their files, . . . [t]his seems to be nothing more than the work normally entailed in preparing any lawsuit for trial. Id. Marinari is of course from a different district, but many courts in this Circuit have also permitted amendment even after the close of discovery when new claims grow from old ones. See, e.g., Mackey v. Dicaprio, No. 02 Civ. 1707 (BSJ) (RLE), 2006 WL 1572111, at *3 (S.D.N.Y. Sept. 7, 2006)

(allowing the addition of fact allegations to the complaint after the close of fact discovery). Here, unlike in Marinari or Mackey, fact discovery remains open.

Dated:     October 4, 2016
           New York, New York

/s/ Ryan Lozar
_____
Ryan Lozar
*Attorney for Plaintiff Katrina Peeples*
305 Broadway, 10th Floor
New York, New York 10007
(310) 867-1562