UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

KATRINA PEEPLES,

        Plaintiff,

-against-

CITY OF NEW YORK, NYPD SERGEANT DENNIS FRIENDLY, NYPD OFFICER ANTHONY RICCIARDI, NYPD OFFICER MIKELANG ZIDOR, et al.,

        Defendants.

----------------------------------------------------------------x

15 CV 6511 (JBW) (PK)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S APPEAL FROM PORTIONS OF MAGISTRATE JUDGE KUO'S OCTOBER 6, 2016, ORDER**

On November 12, 2015, Plaintiff Katrina Peeples filed this Section 1983 lawsuit against Defendant City of New York, Defendant NYPD Sergeant Dennis Friendly, Defendant NYPD Officer Anthony Ricciardi and Defendant NYPD Officer Mikelang Zidor, alleging that Defendants violated her rights under the United States Constitution. Docket No. 1. Fact discovery is still open in this litigation. At present, there is no date set for the close of fact discovery, but it will likely extend into November 2016 at least. Docket No. 36.

On September 8, 2016, Ms. Peeples filed a motion seeking the Court's leave to amend her complaint to add three claims against the Individual Officer Defendants. Docket No. 29. On October 6, 2016, the Honorable Peggy Kuo denied Ms. Peeples's motion. Docket No. 34. For the reasons explained herein, Ms. Peeples respectfully appeals Judge Kuo's denial of her motion to amend to add excessive-force allegations to the complaint. See Fed. R. Civ. P. 72.[1]

---

[1] Ms. Peeples does not appeal Judge Kuo's denial of her motion to add an additional defendant on a failure-to-intervene theory. Nor does Ms. Peeples appeal Judge Kuo's discovery rulings.

## I. Factual Background

The following facts are recounted with no material alteration from their presentation to Judge Kuo in Plaintiff's original motion to amend. Docket No. 29. On the evening of September 7, 2013, Ms. Peeples had dinner with her children, who were fourteen and eleven at the time, in her apartment at 3-10 Astoria Boulevard in Astoria Houses, which is a NYCHA housing development. Ms. Peeples had made plans to meet her friends Taniqua and Tameka after dinner. The three women, all of whom had lived in Astoria Houses since they were little girls, had been friends for decades and this was a normal routine.

Ms. Peeples, Taniqua and Tameka ran into a group of four other women that they knew—Joanna, Melissa, Ebony and Adaishia. The seven women socialized around a bench, with some sitting and some standing. The bench where the women were located was roughly 500 feet from the apartment building where Ms. Peeples lived, and Ms. Peeples and her friends often sat there.

Defendant Sergeant Friendly, Defendant Officer Ricciardi and Defendant Officer Zidor, all of whom were patrolling Astoria Houses in a vehicle that evening, saw the women, stopped their vehicle and approached. Defendants immediately asked the women for their identifications. According to Defendants, as they walked up to the bench they observed the women drinking alcohol. Defendants would later make sworn statements that they observed each and every one of the seven women possessed an open 375-ml bottle of Hennessy in that moment.

Ms. Peeples denies that any of them were drinking, and it was for that reason that she did not understand Defendants' demand for her identification and asked the reason why Defendants were detaining her and the other women. Defendants refused to respond.

Ms. Peeples's friends also asked Defendants their reason for detaining them. At this point, Ms. Peeples sat down on the bench and looked at her phone. According to Ms. Peeples, a

Defendant who, on information and belief, was Officer Ricciardi "tried to snatch [her] phone," then "tried to twist [her] arm," hurting her wrist in the process. Defendant Sergeant Friendly ordered Defendant Officer Ricciardi to handcuff Ms. Peeples, which he did.

Ms. Peeples testified that it was at this time that Defendants searched Joanna's purse and claimed to find a bottle of alcohol. According to Ms. Peeples, this is the only time that anything that could even arguably be construed as alcohol was made known to Defendants or the women. Whatever Defendants claimed to find in Joanna's purse, they left it on the baseball field. By this time, according to Ms. Peeples, roughly six other NYPD officers and multiple police vehicles were on the scene. Defendants handcuffed and arrested all seven women, and transported them to the precinct.

At the precinct, Defendants persisted in their implausible claim that they collectively witnessed every single woman in possession of a 375-ml bottle of Hennessy when they arrived at the scene. The state court arraigned Ms. Peeples, adjourned her case in contemplation of dismissal, and a few months later dismissed the open-container charge against her altogether.

## II. Relevant Procedural Background And Facts Relating To The Motion To Amend

On March 9, 2016, the Court set an April 1, 2016, deadline for Plaintiff to amend her complaint. Docket No. 10. On March 25, 2016, Plaintiff filed a motion to amend a First Amended Complaint, which the Court granted. Docket No. 11; Docket Entry 4/14/2016.

In Plaintiff's Original Complaint and her First Amended Complaint, she pleaded a catchall Section 1983 claim against Individual Defendants stating that the facts alleged therein constituted violations of her Fourth and Fourteenth Amendment rights. Docket No. 1 ¶ 33; Docket No. 12 ¶ 33. Among other things, Plaintiff included allegations that, when Defendants approached the women, she stood up, whereupon "one of the Defendants roughly pushed [her] back down to the bench

where she had been seated." Docket No. 1 ¶ 16; Docket No. 12 ¶ 16. Plaintiff also alleged that Defendants had no justification to detain or arrest the women at all. Docket No. 1 ¶¶ 18-20; Docket No. 12 ¶¶ 18-20. Plaintiff's Original Complaint and her First Amended Complaint did not detail the arm-twisting incident because Plaintiff's Counsel did not learn about it until July 26, 2016.

On July 26, 2016, Defense Counsel deposed Ms. Peeples. During the hours-long proceeding, Defense Counsel elicited testimony from Ms. Peeples about a moment in which Defendant Officer Ricciardi grabbed and twisted her arm in an attempt to wrench her telephone from her hands, causing her pain and discomfort. At the end of the day, Plaintiff's Counsel mentioned to Defense Counsel that Plaintiff would consider amending her complaint to challenge Defendant Officer Ricciardi's use of force upon Ms. Peeples in the arm-twisting incident.

The very next day—July 27, 2016, Plaintiff filed a letter with the Court stating, among other things, that Plaintiff was weighing a motion for leave to file a Second Amended Complaint. Docket No. 27 at 2. Plaintiff remarked that she did

> not believe that any of [her] proposed amendments would require additional fact discovery insofar as they all principally rest on the operative pleading's existing allegations as they have been developed in recent weeks by Defendants' production of records and depositions. This new information supports Plaintiff's proposed first-amendment-retaliation, excessive-force and fabrication-of-evidence claims in a way that the preceding record did not so robustly allow, and that is the reason why Plaintiff argues that she now has cause to move for amendment.

Id. at 2-3. Then, Plaintiff explained the intended claims and her legal and factual arguments in support of them. Id.

Approximately one month later, Plaintiff provided a Proposed Second Amended Complaint to Defendants for review. On September 8, 2016, Plaintiff moved to amend her complaint in the

way described in her July 26, 2016, letter. Docket No. 29. Defendants opposed, Docket No. 30-32, and Plaintiff replied, Docket No. 33.

On October 6, 2016, the Court held a motion hearing and Defendants indicated that if the Court allowed complaint amendment, they would like to depose Ms. Peeples further. Docket No. 34. Plaintiff indicated that Ms. Peeples did not object to appearing for a supplemental deposition at Defense Counsel's convenience. Judge Kuo denied Plaintiff's motion

> on the grounds that the deadline for filing motions to amend pleadings was April 1, 2016, and Plaintiff did not show good cause for why he could not have moved for leave to amend by that deadline. In addition, Defendants have already deposed Plaintiff, and if Plaintiff's amendments were permitted, the need for Defendants to depose Plaintiff a second time constitutes sufficient prejudice to Defendants.

Id.

At this writing, fact discovery remains open and there is much left to exchange. For example, the Court directed Defendants to produce: (1) the identities of the officers who arrived at the scene of the incident to assist Defendants in arresting Ms. Peeples and the other women; (2) copies of two of Ms. Peeples's co-arrestees' summonses; and (3) disciplinary files for already-deposed officers. Defendants are planning to depose the other women who were arrested with Ms. Peeples. Plaintiff, for her part, is weighing whether to depose non-party officers who were at the scene of the incident or to examine them for the first time at trial.

### III. Legal Standard

FRCP 72(a) provides for review of a magistrate judge's order relating to a non-dispositive matter. Fed. R. Civ. P. 72(a). "A party may serve and file objections to the order within 14 days after being served with a copy." Id. "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Id. On

the other hand, FRCP 72(b) provides that a district judge applies de novo review to appeals of a magistrate judge's ruling on dispositive matters. See Fed. R. Civ. P. 72(b).

The Second Circuit has not expressly ruled on the question of whether a motion for leave to amend a complaint is a dispositive or non-dispositive matter. Compare Jean-Laurent v. Wilkerson, 461 F.App'x 18, 25 (2d Cir. Feb 8, 2012) (remanding a case in which the magistrate judge had denied a motion to amend because the denial "effectively dismissed [the plaintiff's] existing state-law claims) (citing Williams v. Beemiller Inc., 527 F.3d 259, 265 (2d Cir. 2008), for the proposition that a magistrate judge "may not make an order that is "functionally equivalent to an order of dismissal"), with Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007) (stating in dicta that a district judge may refer nondispositive motions, such as a motion to amend the complaint, to a magistrate judge for decision without the parties' consent).

### IV. Discussion

#### a. Plaintiff Had Good Cause For Filing The Motion To Amend When She Did

In the event that FRCP 72(a)'s lower standard of review applies, Plaintiff respectfully argues that Judge Kuo clearly erred in finding that Plaintiff did not have good cause for failing to meet the deadline set by the Court for pleading amendment. "[A] finding of 'good cause' depends on the diligence of the moving party." Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000). Here, Plaintiff believes that the record shows that she has been reasonably diligent in seeking to meet the scheduling order's deadline.

As a preliminary matter, and as discussed, supra, Plaintiff's operative pleading already states a Section 1983 claim seeking to vindicate her Fourth Amendment and Fourteenth Amendment rights founded upon allegations that one of the Defendants, inter alia, roughly pushed her during an unlawful arrest. Docket No. 1 ¶ 16; Docket No. 12 ¶ 16. As Plaintiff argued in briefing for Judge

Kuo, any use of force during an unlawful arrest presents a question of fact that is appropriate for jury consideration. See Docket No. 33; Graham v. City of N.Y., 928 F. Supp.2d 610, 617-18 (E.D.N.Y. 2013) (citations & quotations omitted); Lemmo v. McKoy, No. 08 Civ. 4264 (RJD), 2011 WL 843974, at *4 (E.D.N.Y. Mar. 8, 2011) (stating that even where the plaintiff had suffered no notable injury, "a jury, citizens of this city, should decide whether an officer or officers, sworn to protect and serve the community, failed to deliver on their professional vow" by using force without reason); Nimkoff v. Dollhausen, 751 F. Supp.2d 455, 463 (E.D.N.Y. 2010) ("[T]he fact finder must consider the totality of the circumstances . . ." in weighing whether an officer's actions were objectively reasonable.); Black v. Town of Harrison, No. 02 Civ. 2097, 2002 WL 31002824, at *6 (S.D.N.Y. Sept. 5, 2002) (When arrest unlawful, "any degree of force is unreasonable and excessive."); Budgar v. State, 98 Misc. 2d 588, 592 (N.Y. Ct. of Claims, Mar. 8, 1979) ("Any use of force during . . . unlawful arrest is actionable."). Thus it is Plaintiff's position that consideration of her burden to show cause must take into account the fact that the motion to amend is much more akin to conforming the existing pleading to the evidence than raising new issues. See State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981) (affirming claim amendment after the close of discovery because "[t]he amended claim was obviously one of the objects of discovery and related closely to the original claim").

As for my diligence in conforming the complaint to the evidence, it was during Ms. Peeples's July 26, 2016, deposition that she testified that Defendant Officer Ricciardi twisted her arm in an effort to wrest her telephone from her hand, causing her pain in the process. That same day I told Defense Counsel that I would consider complaint amendment to conform the pleading to the evidence. On the very next day, July 27, 2016, I told the Court about possible complaint amendment in a letter. Docket No. 24. On August 31, 2016, I completed the third and final

Defendant Officer deposition. I questioned the Defendant Officers about the arm-twisting incident during their respective depositions. On September 8, 2016, after first sharing the Proposed Second Amended Complaint with Defense Counsel to request his position, I filed the instant motion. Docket No. 29.

In light of the aforementioned timeline relating to discovery, I respectfully argue that I was reasonably diligent in filing the motion to amend the complaint a little over one month after learning about the arm-twisting incident for the first time during Plaintiff's July 26, 2016, deposition. Defendants' depositions were taken in the following weeks, during which I explored the matter further, then immediately filed the motion to amend.

Judge Kuo noted that because Ms. Peeples knew about the arm-twisting incident prior to the expiration of the pleading-amendment deadline, her motion could not be characterized as diligently made. In this appeal, I acknowledge, as I did to Judge Kuo, that Ms. Peeples knew about the arm-twisting incident before the expiration of the deadline. At the same time, I respectfully argue that because Ms. Peeples is not a lawyer and did not realize its significance, her awareness of the fact cannot alone dictate whether what was done with the information was reasonable. I respectfully argue that whether the motion was diligently made—and thus FRCP 16's good cause standard met—has more to do with what I did with the information as Ms. Peeples's attorney once I learned it.

The most difficult aspect of my position, of course, and this is why Judge Kuo's ruling is understandable though I respectfully appeal it as erroneous, is that it allows one to think that although I may have been diligent in filing the motion after learning about the arm-twisting incident, perhaps I was not diligent in learning the fact from Ms. Peeples sooner. I argue that it is not per se true that an attorney is not diligent in learning a fact from a client simply because that

attorney learns it during discovery along with the other side. I make this argument because I conducted a number of rigorous interviews with Ms. Peeples about the incident, yet I never unearthed the subject fact.

In contrast, Mr. Noble did unearth the fact at Ms. Peeples's deposition. His success may be due to the particular wording of a question, or the fact that it was in the context of an intense, hours-long deposition, but whatever the reason, Ms. Peeples's motion was diligently made after I learned about the arm-twisting incident.

### b. Defendants Will Not Suffer Prejudice Sufficient To Preclude Amendment

In the event that the Court finds that Ms. Peeples had good cause to file the motion after the deadline, "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the non-movant of prejudice[.]" AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 725 (2d Cir. 2010). Judge Kuo found that Defendants' wish to call Ms. Peeples back for supplemental deposition questions would be prejudice enough to deny Ms. Peeples leave to amend, but Plaintiff respectfully disagrees.

At best Defendants posit that amendment might require "discovery [to be] extended" or that "certain individuals might have to be deposed again." Docket No. 31. But these are "conclusory assertions," particularly here, where fact discovery remains open. See Moroughan v. Cty. of Suffolk, 99 F. Supp.3d 317, 324 (EDNY 2015). Furthermore, additional discovery "does not automatically constitute undue prejudice," and it should be noted that although Ms. Peeples will sit for a supplemental deposition, the reopened proceeding would not likely require much time. See State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 246 F.R.D. 143, 149 (E.D.N.Y. 2007). That is because Defendants plainly recognized that the arm-twisting incident was significant during

Ms. Peeples's July 26, 2016, deposition, as many questions were devoted to exploring that use of force that day.

Any claim of prejudice is also undermined because the existing operative pleading already has force allegations and, in addition, the new force allegations arise from the same occurrence that the Parties have long had under study. Consider Marinari v. Dunleavy, 86 F.R.D. 127, 129 (E.D.Pa. 1980), in which the court granted the plaintiff's post-discovery addition of a negligence claim to his pre-existing civil rights claims. The Marinari court said that the defendants appeared to argue that "because discovery was taken with a view towards a civil rights claim and not a negligence claim, they would be prejudiced in that they would need to review all past discovery and perhaps take new discovery." Id. The court disagreed that that was prejudice, stating that "[a]lthough [d]efendants may have to review their files, . . . [t]his seems to be nothing more than the work normally entailed in preparing any lawsuit for trial. Id. Marinari is of course from a different district, but many courts in this Circuit have also permitted amendment even after the close of discovery when new claims grow from old ones. See, e.g., Mackey v. Dicaprio, No. 02 Civ. 1707 (BSJ) (RLE), 2006 WL 1572111, at *3 (S.D.N.Y. Sept. 7, 2006) (allowing the addition of fact allegations to the complaint after the close of fact discovery). Here, unlike in Marinari or Mackey, fact discovery remains open.

## V. Conclusion

In light of the foregoing, Plaintiff respectfully asks the Court to grant her FRCP 72 appeal of the denial of her motion to amend as discussed herein.

Dated:     October 20, 2016
           New York, New York

/s/ Ryan Lozar
Ryan Lozar
*Attorney for Plaintiff Katrina Peeples*
305 Broadway, 10th Floor
New York, New York 10007
(310) 867-1562