```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

KATRINA PEEPLES,                                    DEFENDANTS'
                                                    STATEMENT OF
                                                    MATERIAL FACTS
                                      Plaintiff,   PURSUANT TO LOCAL
                                                    CIVIL RULE 56.1
         -against-
                                                    15-CV-6511 (JBW)(PK)
CITY OF NEW YORK, NYPD SERGEANT
DENNIS FRIENDLY, Shield No. 233, NYPD
OFFICER ANTHONY RICCIARDI, NYPD
OFFICER MIKELANG ZIDOR, Shield No. 27521,
and NYPD OFFICERS JOHN/JANE DOES 1-5,

                                      Defendants.

------------------------------------------------------------------X
```

Defendants City of New York, Sergeant Dennis Friendly, Police Officer Anthony Ricciardi, and Police Officer Zidor (hereinafter "defendants") submit this statement pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Eastern District of New York to set forth the material facts as to which defendants contend there are no genuine issues to be tried.[1]

1. On December 9, 2016, plaintiff filed the Second Amended Complaint alleging that her constitutional rights were violated when she was arrested on or about September 8, 2013. See Second Amended Complaint, annexed to Declaration of Alexander Noble, dated May 5, 2017 (hereinafter "Noble Decl.") as Exhibit "A."

---

[1] Defendants adopt the facts set forth herein only for purposes of the Motion for Summary Judgment and reserve the right to present different and/or conflicting facts at any trial in this matter. See Vasconcellos v. City of New York, 12-CV-8445 (CM)(HBP), 2015 U.S. Dist. LEXIS 121572, at *4 (S.D.N.Y. Sept. 9, 2015) (Local Civil Rule 56.1 "means a party can 'admit' facts that it intends to dispute at trial without suffering any prejudice – the 'admission' ... neither binds the party going forward if the motion is denied nor can it be admitted in evidence at trial.").

2. On September 7, 2013, shortly after 9:00 p.m., plaintiff entered Hallet's Cove Park, a municipal property located next to a residential building owned by the New York City Housing Authority. See Transcript of Plaintiff's July 26, 2016 Deposition, annexed to Noble Decl. as Exhibit "B," p. 70:20-21.

3. On September 7, 2013, Sergeant Friendly, Officer Ricciardi, and Officer Zidor were assigned to the Conditions Unit of Police Service Area 9. See Transcript of Officer Ricciardi's Deposition, annexed to Noble Decl. as Exhibit "C," pp. 10:16-21, 11:5-10, 11:22-12:11. The Conditions Unit was responsible for patrolling areas surrounding residential buildings owned by the New York City Housing Authority to address quality of life offenses. See Exhibit "C," pp. 12:12-18, 36:13-20. The officers' tour of duty began at 10:00 p.m. on September 7, 2013, and ended on 6:35 a.m. on September 8, 2013. See Exhibit C to Noble Decl., p. 10:22-24.

4. At approximately 12:20 a.m. on September 8, 2013, Sergeant Friendly, Officer Ricciardi, and Officer Zidor observed plaintiff and six other individuals inside of Hallet's Cove Park. See Exhibit C to Noble Decl., p. 124:24-125:08; Event Chronology Report, annexed to Noble Decl. as Exhibit "D," p. D202.[2]

### **Rules and Regulations of Hallet's Cove Park**

5. At the time of plaintiff's arrest, Hallet's Cove Park was a municipal property under the jurisdiction of the New York City Department of Parks and Recreation (hereinafter "Parks Department"), designated as Parks Department Property Q226-01. See Parks Inspection Program Report, dated August 13, 2013, annexed as Exhibit "F" to Noble Decl., p. D45.

---

[2] For ease of reference, documents produced during discovery cited herein are referenced by their Bates Stamp numbers.

6. The Parks Department periodically conducts inspections of the properties under its jurisdiction, including Hallet's Cove Park. See Affidavit of Parks Inspector Anita Campbell, annexed as Exhibit "G" to Noble Decl.

7. On August 13, 2013, a Parks Department employee named Anita Campbell (hereinafter "Parks Inspector Campbell") conducted an inspection of Hallet's Cove Park and documented the results of her inspection in the Parks Inspection Program Report dated August 13, 2013. See Exhibit F to Noble Decl.

8. Hallet's Cove Park is a fenced property that includes a multi-purpose play area, a handball court, play equipment, and a comfort station containing a restroom. See Transcript of Parks Inspector Anita Campbell's Deposition, annexed to Noble Decl. at Exhibit "H," p. 18:18-18:24. The multi-purpose play area, or "MPPA," is an athletic field located within Hallet's Cove Park. See Exhibit H to Noble Decl., p. 16:08-15.

9. As part of her August 13, 2013 inspection of Hallet's Cove Park, Parks Inspector Campbell inspected the number and types of Parks Department signs posted in and around Hallet's Cove Park. See Exhibit F to Noble Decl., p. D46; Exhibit H to Noble Decl., p. 21:13-22:03.

10. Parks Inspector Campbell's inspection of the signs posted in and around Hallet's Cove Park included observation of "routed" signs, which state the name of the Parks Department property, as well as "consolidated" signs, which state the Parks Department rules and regulations that govern the public's use of Hallet's Cove Park. See Exhibit H to Noble Decl., p. 21:13-22:03.

11. The rules and regulations posted on consolidated signs prohibit, among other things, drinking alcohol, drug use, and littering. See Exhibit H to Noble Decl., p. 37:25-

3

38:13. Additionally, consolidated signs state the hours during which a Parks Department property is closed to the public. Id.

12. On August 13, 2013, Parks Inspector Campbell observed two consolidated posted in Hallet's Cove Park. See Exhibit F to Noble Decl., p. D46; Exhibit H to Noble Decl., p. 26:19-22.

13. The consolidated signs observed by Parks Inspector Campbell stated that Hallet's Cove Park was open to the public between the hours of 9:00 a.m. and 9:00 p.m. See Exhibit H to Noble Decl., p. 36:02-04.

14. Parks Inspector Campbell photographed one of the consolidated signs she observed in Hallet's Cove Park and included the photograph in her August 13, 2013 Parks Inspection Program Report. See Exhibit H to Noble Decl., p. 26:23-25; Exhibit F, p. D49.

15. At the time of plaintiff's arrest, Officer Ricciardi, Sergeant Friendly, and Officer Zidor were aware of the Parks Department signage posted in and around Hallet's Cove Park stating that it was unlawful to be present in Hallet's Cove Park after 9:00 p.m. See Exhibit C to Noble Decl., p. 143:02-14; Transcript of Sergeant Friendly's Deposition, annexed to Noble Decl. as Exhibit "E," p. 133:04-09. Transcript of Officer Zidor's Deposition, annexed as Exhibit "I" to Noble Decl., p. 106:22-24.

## Plaintiff's September 8, 2013 Arrest

16. On September 8, 2013, Officer Ricciardi observed plaintiff inside of Hallet's Cove Park at approximately 12:20 a.m. See Exhibit C to Noble Decl., p. 142:12-20. Officer Ricciardi believed it was unlawful for plaintiff to be present inside Hallet's Cove Park at that time because posted Parks Department signage stated that the property closed at 9:00 p.m. See Exhibit C to Noble Decl., p. 143:12-14.

17. On September 8, 2013, Sergeant Friendly, Officer Ricciardi, and Officer Zidor approached plaintiff and the other individuals on the basis that, among other things, they intended to issue summonses for being unlawfully present in Hallet's Cove Park after 9:00 p.m. See Exhibit C to Noble Decl., p. 142:12-20; Exhibit E to Noble Decl., p. 106:15-17.

18. When the officers approached plaintiff, Sergeant Friendly observed plaintiff and the other individuals with her drinking alcohol. See Exhibit E to Noble Decl., p. 103:19-21. Officer Zidor observed some of the individuals they approached holding plastic cups, Exhibit I to Noble Decl., p. 115:09-11, and others drinking out of bottles, Exhibit I to Noble Decl., p. 127:02-04. Officer Ricciardi observed multiple bottles of alcohol present among plaintiff and the other individuals there. See Exhibit C to Noble Decl., p. 136:05-11.

19. After approaching plaintiff, the officers searched the area on the benches where plaintiff and the other individuals were sitting. See Transcript of Plaintiff's March 22, 2017 Deposition, annexed as Exhibit "J" to Noble Decl., p. 166:16-23. On the floor, the officers found a bottle of Hennessy, an alcoholic beverage. See Exhibit J to Noble Decl., p. 167:03-07. Plaintiff observed Sergeant Friendly holding the Hennessy bottle in his hand. See Exhibit J to Noble Decl., p. 167:16-19. The officers recovered at least one Hennessy bottle in plaintiff's proximity. See Exhibit E to Noble Decl., p. 103:22-104:02; Exhibit I to Noble Decl., p. 133:19-24.

20. Hennessy is a brown alcoholic beverage "that looks like liquor." See Exhibit B to Noble Decl., p. 73:13-20.

21. When Sergeant Friendly found the Hennessy bottle, he directed plaintiff and the other individuals to produce identification. See Exhibit J to Noble Decl., p. 169:18-22. The reason plaintiff was directed to produce identification was so that the officers could check

whether plaintiff had any open warrants to attempt to issue a summons. See Exhibit C to Noble Decl., p. 145:20-23.

22. Plaintiff refused to provide any identification as directed, despite having an identification card in her pocket, and then falsely told the officers that she did not have any identification on her person. See Exhibit B to Noble Decl., p. 58:15-18.

23. Plaintiff repeatedly refused to provide identification in response to the officers' requests. See Exhibit E to Noble Decl., p. 108:18-22.

24. Sergeant Friendly determined that, based in part on a lack of cooperation from plaintiff, it was necessary to place plaintiff and several of the other individuals under arrest and transport them to a police precinct. See Exhibit E to Noble Decl., p. 111:06-19. Plaintiff further alleges that Sergeant Friendly said, "if nobody has no ID, that everyone is going to jail." See Exhibit J to Noble Decl., p. 169:18-22.

25. When Officer Ricciardi attempted to place plaintiff under arrest, plaintiff was holding her cellular telephone in her hand. See Exhibit J to Noble Decl., p. 147:09-11.

26. Plaintiff was sending electronic text messages to an acquaintance when Officer Ricciardi approached plaintiff to place her under arrest. See Exhibit J to Noble Decl., 147:17-18.

27. Officer Ricciardi directed plaintiff to put her phone away when he attempted to arrest plaintiff. Plaintiff refused to put her phone away as instructed, and plaintiff stated to Officer Ricciardi, "no, because we [aren't] being arrested." See Exhibit J to Noble Decl., 147:19-24.

28. Officer Ricciardi again instructed plaintiff to put her phone away. See Exhibit J, 148:15-19. Plaintiff again refused to put her phone away. See Exhibit J to Noble

Decl., 158:24-25. Plaintiff then stated to Officer Ricciardi, "I don't have to." See Exhibit J to Noble Decl., 159:01-07.

29. After plaintiff refused Officer Ricciardi's two orders to put her phone away, Officer Ricciardi took hold of plaintiff's right wrist in which plaintiff was holding the cellular phone he told her to put away. See Exhibit J to Noble Decl., 154:04-09.

30. When Officer Ricciardi took hold of plaintiff's wrist, plaintiff kept her cellular telephone in her hand, and then looked at the cellular telephone "because she was about to text somebody or something." See Exhibit J to Noble Decl., 157:07-08.

31. Within 60 seconds of Officer Ricciardi taking hold of plaintiff's right wrist, Officer Ricciardi took his handcuffs out. See Exhibit J, 155:02-06. For approximately five minutes, Officer Ricciardi stood holding plaintiff's right wrist, repeatedly telling plaintiff to put her cellular telephone down. See Exhibit J to Noble Decl., 155:21-25.

32. Plaintiff finally put her cellular telephone in her pocket once Officer Ricciardi placed plaintiff's hands behind her back and secured the handcuffs. See Exhibit J to Noble Decl., 172:16-22; 156:01-05. Plaintiff was holding onto her cellular telephone for the entire five minutes when Officer Ricciardi was holding plaintiff's wrist. See Exhibit J to Noble Decl., 156:12-15.

33. Aside from Officer Ricciardi holding plaintiff's wrist while placing her in handcuffs, there was no additional force used against plaintiff during her arrest. See, Exhibit B to Noble Decl., 99:18-21.

34. Officer Ricciardi did not cause any bruising or scratching to plaintiff's wrist by holding onto plaintiff's wrist. See Exhibit B to Noble Decl., p. 87:13-15.

35. Plaintiff did not request medical attention from any of the officers. See Exhibit B to Noble Decl., p. 82:20-22.

36. Plaintiff did not seek medical attention for any physical injuries at any time following her arrest. See Exhibit B to Noble Decl., p. 82:18-19.

37. Plaintiff was arrested on charges of, among other things, possession of an open container of alcohol in a public place in violation of New York City Administrative Code § 10-125. See Plaintiff's Arrest Report, annexed as Exhibit "K" to Noble Decl., D1.

38. Plaintiff was transported to the 114th Precinct for arrest processing. See Exhibit B to Noble Decl., p. 101:03-09.

39. At 1:29 a.m. on September 8, 2013, during arrest processing, plaintiff name was searched in the Automated Database Warrant System, or "ADW." See Affidavit of Sergeant Matthew Sheehan, annexed as Exhibit "L" to Noble Decl., ¶ 5(a). The ADW is one system used by NYPD Officers to determine whether an individual in custody has any outstanding warrants. Id., ¶ 3.

40. The search of plaintiff's pedigree information on the ADW system, conducted by Officer Zidor, revealed that plaintiff had an open warrant under Queens Criminal Court Docket No. 2011SQ069669 stemming from a prior open container violation under New York City Administrative Code § 10-125. See Plaintiff's Warrant Search History, annexed as Exhibit "M" to Noble Decl., p. D310-D311.

41. The discovery of plaintiff's open warrant under Queens Criminal Court Docket No. 2011SQ069669 was recorded in plaintiff's Arrest Report during arrest processing. See Exhibit K to Noble Decl., D1. Plaintiff's Arrest Report additionally recorded the discovery of another open warrant under Queens Criminal Court Docket No. 2011SQ076117. Id.

42. On September 8, 2013, plaintiff was arraigned under Queens Criminal Court Docket No. 2013QN050313 on one charge of violating New York City Administrative Code § 10-125 stemming from her September 8, 2013 arrest. See Certificate of Disposition No. 319054, annexed as Exhibit "N" to Noble Decl.

43. The criminal charges against plaintiff arising from her September 8, 2013 arrest were resolved with plaintiff's acceptance of an Adjournment in Contemplation of Dismissal at arraignment. See Exhibit N to Noble Decl.

Dated: New York, New York
May 5, 2017

        ZACHARY W. CARTER
        Corporation Counsel for the
         City of New York
        *Attorney for Defendants City, Friendly, Ricciardi, and Zidor*
        100 Church Street, Room 3-310
        New York, New York 10007
        (212) 356-2357

        By:       /s/
          Alexander Noble
          Assistant Corporation Counsel
          Special Federal Litigation Division

**VIA ECF & FIRST CLASS MAIL**
TO: Ryan Lozar
     305 Broadway, 10th Floor
     New York, NY 10007
     ryanlozar@gmail.com