UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KATRINA PEEPLES,

Plaintiff,

-against-

CITY OF NEW YORK, NYPD SERGEANT DENNIS
FRIENDLY, Shield No. 233, NYPD OFFICER
ANTHONY RICCIARDI, NYPD OFFICER
MIKELANG ZIDOR, Shield No. 27521, and NYPD
OFFICERS JOHN/JANE DOES 1-5,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT PURSUANT TO RULE 56 OF THE
FEDERAL RULES OF CIVIL PROCEDURE**

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants City, Friendly,*
*Ricciardi, and Zidor*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Alexander Noble*
*Tel: (212) 356-2357*
*Matter No.: 2015-049881*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................... 1

STATEMENT OF FACTS ...................................................................... 1

STANDARD OF REVIEW ..................................................................... 6

ARGUMENT

      POINT I

             PLAINTIFF FAILS TO STATE A VIABLE
             FALSE ARREST CLAIM BECAUSE
             PLAINTIFF'S ARREST WAS SUPPORTED BY
             PROBABLE CAUSE................................................................ 8

             A.  Legal Standard Regarding Probable Cause ........................................ 8

             B.  Plaintiff's Admitted Presence in Hallet's Cove
                 Park after 9:00 p.m. Created Probable Cause
                 for her Arrest........................................................................ 9

             C.  The Officers' Undisputed Discovery of an
                 Open Container of Alcohol In Plaintiff's
                 Proximity Created Probable Cause for
                 Plaintiff's Arrest. .............................................................. 10

             D.  Plaintiff's False Arrest Claim Fails Because
                 She Had Two Open Arrest Warrants on the
                 Date of Her September 8, 2013 Arrest. ............................................ 12

      POINT II

             DEFENDANTS ARE ENTITLED TO
             QUALIFIED IMMUNITY FROM PLAINTIFF'S
             FALSE ARREST CLAIM BECAUSE
             PLAINTIFF'S ARREST WAS SUPPORTED BY
             ARGUABLE PROBABLE CAUSE......................................................... 16

             A.  Legal Standard Regarding Qualified Immunity. .............................. 16

             B.  Defendants Are Entitled to Qualified Immunity
                 as to Plaintiff's False Arrest Claim.................................................... 17

POINT III

       PLAINTIFF FAILS TO STATE A VIABLE
       EXCESSIVE FORCE CLAIM. ............................................................... 18

       A.   Legal Standard Regarding Excessive Force ...................................... 18

       B.   Officer Ricciardi's Alleged Force Against
            Plaintiff Was Not Excessive. ............................................................ 19

       C.   Plaintiff's Alleged *De Minimis* Injury is
            Insufficient to Support an Excessive Force
            Claim.................................................................................................. 20

       D.   Officer Ricciardi is Entitled to Qualified
            Immunity for the Alleged Force Used. .............................................. 20

POINT IV

       PLAINTIFF FAILS TO STATE A VIABLE
       FAILURE TO INTERVENE CLAIM. ...................................................... 21

POINT V

       PLAINTIFF FAILS TO STATE A VIABLE
       CLAIM AGAINST THE CITY OF NEW YORK. ................................. 23

CONCLUSION ...................................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**                                                                **Pages**

Abdul-Rahman v. City of N.Y.,
    10-CV-2778 (ILG), 2012 U.S. Dist. LEXIS 45653 (E.D.N.Y. Mar. 27, 2012) .......................9

Amnesty Am. v. Town of W. Hartford,
    361 F.3d 113 (2d Cir. 2004)..................................................................................................25

Amore v. Novarro,
    624 F.3d 522 (2d Cir. 2010)..................................................................................................16

Andersen v. United States,
    98-CV-4782 (ADS), 2001 U.S. Dist. LEXIS 24469 (E.D.N.Y. July 20, 2001) ......................13

Anderson v. Creighton,
    483 U. S. 635 (1987)..............................................................................................................17

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986).................................................................................................................7

Ashcroft v. al-Kidd,
    563 U.S. 731 (2011)...............................................................................................................17

Atkins v. City of Chicago,
    631 F.3d 823 (7th Cir. 2011) .................................................................................................15

Baker v. McCollan,
    443 U.S. 137 (1979)...............................................................................................................12

Banks v. Fuentes.,
    545 Fed. Appx. 518 (7th Cir. 2013)..................................................................................14, 15

Caldarola v. Calabrese,
    298 F.3d 156 (2d Cir. 2002)....................................................................................................8

Caraballo v. City of N.Y.,
    10-CV-1885 (SJ) (RML), 2012 U.S. Dist. LEXIS 188902
    (E.D.N.Y. June 21, 2012)
    (aff'd Caraballo v. City of N.Y., 526 F. App'x 129 (2d Cir. 2013)) .................................11, 17

Celestin v. City of New York,
    581 F. Supp. 2d 420 (E.D.N.Y. 2008) ....................................................................................9

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)................................................................................................................7

Connick v. Thompson,
    131 S. Ct. 1350 (2011)..........................................................................................................24

**Cases**                                                                                        **Pages**

Devenpeck v. Alford,
    543 U.S. 146 (2004)....................................................................................................9

Dockery v. Tucker,
    97-CV-3584 (ARR), 2006 U.S. Dist. LEXIS 97826 (E.D.N.Y. Sept. 6, 2006) ....................13

Escalera v. Lunn,
    361 F.3d 737 (2d Cir. 2004)........................................................................................8

Feinberg v. City of New York,
    99-CV-12127 (RCC), 2004 U.S. Dist. LEXIS 16098
    (S.D.N.Y. Aug. 13, 1999) .........................................................................................22

First National Bank of Arizona v. Cities Service Co.,
    391 U.S. 253 (1968)....................................................................................................7

Gallo v. Prudential Residential Servs., Ltd. Partnership,
    22 F.3d 1219 (2d Cir. 1994)........................................................................................7

Giddeon v. Flynn,
    14-CV-331 (RTR), 2015 U.S. Dist. LEXIS 143124 (E.D. Wis. Oct. 20, 2015).....................15

Graham v. Connor,
    490 U.S. 386 (1989)............................................................................................12, 19

Harlow v. Fitzgerald,
    457 U.S. 800 (1982)..................................................................................................16

Harper v. City of N.Y.,
    No. 11-CV-4333 (CM), 2013 U.S. Dist. LEXIS 14951
    (S.D.N.Y. Jan. 30, 2013)..........................................................................................24

Jaegly v. Couch,
    439 F.3d 149 (2d Cir. 2006)........................................................................................9

Jeffreys v. Rossi,
    275 F. Supp. 2d 463 (S.D.N.Y. 2003),
    aff'd, 426 F.3d 549 (2d Cir. 2005).............................................................................6

Jenkins v. City of New York,
    478 F.3d 76 (2d Cir. 2007)........................................................................................8

Johnson v. City of New York,
    551 Fed. Appx. 14, 2014 U.S. App. LEXIS 1137, 2014 WL 223432
    (2d Cir. Jan. 22, 2014) ............................................................................................23

**Cases**                                                                                             **Pages**

Kennedy v. City of New York,
    11-CV-1451 (ERK), 2013 U.S. Dist. LEXIS 96096 (E.D.N.Y. July 10, 2013) ......................13

Lemmo v. McKoy,
    2011 U.S. Dist. LEXIS 23075 (E.D.N.Y. Mar. 8, 2011) ........................................................19

Lennon v. Miller,
    66 F.3d 416 (2d Cir. 1995)................................................................................................16, 18

Malley v. Briggs,
    475 U.S. 335 (1986) ............................................................................................................17

Marlin v. City of N.Y.,
    15-CV-2235 (CM), 2016 U.S. Dist. LEXIS 122426 (S.D.N.Y. Sep. 7, 2016)................10, 19

Maryland v. Pringle,
    540 U.S. 366 (2003) ............................................................................................................17

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)..............................................................................................................7

McKay v. City of New York,
    13-CV-2948 (JGK), 32 F. Supp. 3d 499 (S.D.N.Y. 2014) .....................................................16

McLaurin v. New Rochelle Police Officers,
    373 F. Supp. 2d 385 (S.D.N.Y. 2005)...................................................................................24

Mesa v. City of New York,
    09-CV-10464 (JPO), 2013 U.S. Dist. LEXIS 1097 (S.D.N.Y. Jan. 3, 2013) .........................20

Messerschmidt v. Millender,
    132 S. Ct. 1235 (2012)........................................................................................................17

Milo v. City of N.Y.,
    59 F. Supp. 3d 513 (E.D.N.Y. 2014) ...................................................................................19

Minott v. Duffy,
    11-CV-1217 (KPF), 2014 U.S. Dist. LEXIS 49791 (S.D.N.Y. Apr. 8, 2014) .........................8

Monell v. Department of Social Services,
    436 U.S. 658 (1978)............................................................................................................23

Morgan v. City of New York,
    12-CV-704, 2014 U.S. Dist. LEXIS 94693 (E.D.N.Y. July 10, 2014)....................................13

Panetta v. Crowley,
    460 F.3d 388 (2d Cir. 2006)..................................................................................................9

**Cases**                                                                                   **Pages**

Pearson v. Callahan,
   555 U.S. 223 (2009)...............................................................................................16

Pierson v. Ray,
   386 U.S. 547 (1967)...............................................................................................8

Posr v. Court Officer Shield No. 207,
   180 F.3d 409 (2d Cir. 1999).....................................................................................8

Prowisor v. Bon-Ton,
   426 F. Supp. 2d 165 (S.D.N.Y. 2006)....................................................................24

Read v. Town of Suffern Police,
   10-CV-9042 (JPO), 2013 U.S. Dist. LEXIS 89189 (S.D.N.Y. June 25, 2013).......................21

Ricciuti v. New York City Transit Auth.,
   124 F.3d 123 (2d Cir. 1997)................................................................................ 8-9

Salazar v. City of New York,
   15-CV-1989 (KBF), 2016 U.S. Dist. LEXIS 89774
   (S.D.N.Y. July 11, 2016) ......................................................................................22

Saucier v. Katz,
   533 U.S. 194 (2001)...............................................................................................22

Savino v. City of New York,
   331 F.3d 63 (2d Cir. 2003)......................................................................................7

Simon v. City of New York,
   09-CV-1302 (ENV) (RER), 2011 U.S. Dist. LEXIS 9515
   (E.D.N.Y. Jan. 3, 2011) .........................................................................................22

Smith v. City of New York,
   04-CV-3286 (TPG), 2010 U.S. Dist. LEXIS 88774 (S.D.N.Y. Aug. 27, 2010).....................18

Steagald v. United States,
   451 U.S. 204 (1981)...............................................................................................13

Sullivan v. City of New York,
   10-CV-0038 (NRB), 2011 U.S. Dist. LEXIS 96461 (S.D.N.Y. Aug. 29, 2011)....................19

Sullivan v. Gagnier,
   225 F.3d 161 (2d Cir. 2000)....................................................................................21

Torres v. Hanslmaier,
   94-CV-4082 (MGC), 1995 U.S. Dist. LEXIS 6193 (S.D.N.Y. May 8, 1995)........................11

**<u>Cases</u>**                                                                                                    **<u>Pages</u>**

<u>Townes v. City of New York</u>,
     176 F.3d 138 (2d Cir. 1999)......................................................................................13

<u>Turner v. City of Chicago</u>,
     12-CV-9994 (MSS), 2015 U.S. Dist. LEXIS 159139 (N.D. Ill. Nov. 25, 2015).....................15

<u>United States v. Davis</u>,
     111 F.Supp.3d 323 (E.D.N.Y. 2015) ....................................................................11, 12

<u>Utah v. Strieff</u>,
     579 U.S. __ (2016)..............................................................................................13

<u>Vippolis v. Village of Haverstraw</u>,
     768 F.2d 40 (2d Cir. 1985)......................................................................................23

<u>Wajid Kahlil Al-Qadaffi v. N.Y. City Police Dep't</u>,
     16-CV-05422 (BMC)(RLM), 2016 U.S. Dist. LEXIS 143532
     (E.D.N.Y. Oct. 13, 2016) ........................................................................................11

<u>Walczyk v. Rio</u>,
     496 F.3d 139 (2d Cir. 2007)....................................................................................17

<u>White v. Pauly</u>,
     2017 U.S. LEXIS 5 (U.S. Jan. 9, 2017) .................................................................17

<u>Whren v. United States</u>,
     517 U.S. 806 (1996)................................................................................................8

<u>Zellner v. Summerlin</u>,
     494 F.3d 344 (2d Cir. 2007)....................................................................................9

**<u>Statutes</u>**

42 U.S.C § 1983.............................................................................1, 8, 12, 14, 15, 23

56 R.C.N.Y. § 1-03(a)(1) ...........................................................................................9, 10

56 R.C.N. Y. § 1-07 ...................................................................................................10

Fed. R. Civ. P. 56....................................................................................................1, 26

Fed. R. Civ. P. 56(c) .....................................................................................................6

Local Civil Rule 56.1 ......................................................................................................1

New York City Administrative Code § 10-125 ........................................5, 6, 10, 11, 12

# PRELIMINARY STATEMENT

Plaintiff Katrina Peeples filed this action pursuant to 42 U.S.C § 1983 alleging claims of false arrest, excessive force, failure to intervene, and a claim for municipal liability arising from her September 8, 2013 arrest. Defendants City of New York, Sergeant Dennis Friendly, Police Officer Anthony Ricciardi, and Police Officer Zidor (hereinafter "defendants"), now move for summary judgment to dismiss plaintiff's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. The record in this case demonstrates that (i) plaintiff's false arrest claim fails because plaintiff's arrest was supported by actual and arguable probable cause; (ii) plaintiff's excessive force claims fails because the alleged force against plaintiff was objectively reasonable and resulted in only *de minimis* injury; (iii) plaintiff's failure to intervene claims fails because there were no underlying constitutional violations; and (iv) plaintiff's Monell claim fails because no municipal policy or practice caused a violation of plaintiff's constitutional rights. Defendants' motion for summary judgment should be granted, as there is no genuine issue of material fact necessitating a trial and no competent evidence to sustain a verdict in plaintiff's favor under the governing law.

# STATEMENT OF FACTS[1]

On December 9, 2016, plaintiff filed the Second Amended Complaint alleging that her constitutional rights were violated during her arrest on or about September 8, 2013. See Defendant's Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 (hereinafter "Def. 56.1 St.") ¶ 1. On September 7, 2013, shortly after 9:00 p.m., plaintiff entered Hallet's Cove Park, a municipal park located next to a residential building owned by the New York City

---

[1] For a full statement of undisputed facts, the Court is respectfully referred to defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1, which is submitted concurrently herewith. A brief recitation of the salient undisputed facts and facts deemed to be true for this motion practice only, however, is set forth herein for the Court's consideration.

Housing Authority. See Def. 56.1 St. ¶ 2. On September 7, 2013, Sergeant Friendly, Officer Ricciardi, and Officer Zidor were assigned to the Conditions Unit of Police Service Area 9. See Def. 56.1 St. ¶ 3. The Conditions Unit was responsible for patrolling areas surrounding residential buildings owned by the New York City Housing Authority to address quality of life offenses. Id. The officers' tour of duty began at 10:00 p.m. on September 7, 2013, and ended on 6:35 a.m. on September 8, 2013. Id. At approximately 12:20 a.m. on September 8, 2013, Sergeant Friendly, Officer Ricciardi, and Officer Zidor observed plaintiff and six other individuals inside of Hallet's Cove Park. See Def. 56.1 St. ¶ 4.

At the time of plaintiff's arrest, Hallet's Cove Park was a municipal property under the jurisdiction of the New York City Department of Parks and Recreation (hereinafter "Parks Department"), designated as Parks Department Property Q226-01. See Def. 56.1 St. ¶ 5. The Parks Department periodically conducts inspections of the properties under its jurisdiction, including Hallet's Cove Park. See Def. 56.1 St. ¶ 6. On August 13, 2013, a Parks Department employee named Anita Campbell (hereinafter "Parks Inspector Campbell") conducted an inspection of Hallet's Cove Park and documented the results of her inspection in the Parks Inspection Program Report dated August 13, 2013. See Def. 56.1 St. ¶ 7. Hallet's Cove Park is a fenced property that includes a multi-purpose play area, a handball court, play equipment, and a comfort station containing a restroom. See Def. 56.1 St. ¶ 8. The multi-purpose play area, or "MPPA," is an athletic field located within Hallet's Cove Park. Id.

As part of her August 13, 2013 inspection of Hallet's Cove Park, Parks Inspector Campbell inspected the number and types of Parks Department signs posted in and around Hallet's Cove Park. See Def. 56.1 St. ¶ 9. Parks Inspector Campbell's inspection included observation of so-called "routed" signs, which state the name of the Parks Department property, as well as "consolidated" signs, which state the Parks Department rules and regulations

governing the public's use of the property. See Def. 56.1 St. ¶ 10. The rules and regulations posted on Parks Department consolidated signs prohibit, among other things, drinking alcohol, drug use, and littering, and additionally state the hours that a Parks Department property is closed to the public. See Def. 56.1 St. ¶ 11.

On August 13, 2013, Parks Inspector Campbell observed and documented two consolidated posted in and around Hallet's Cove Park stating the rules and regulations governing the public's use of the property. See Def. 56.1 St. ¶ 12. The consolidated signs in Hallet's Cove Park stated that the property was open to the public between the hours of 9:00 a.m. and 9:00 p.m. See Def. 56.1 St. ¶ 13. As part of her August 13, 2013 inspection of Hallet's Cove Park, Parks Inspector Campbell took a photograph of one of the consolidated signs stating the rules and regulations of Hallet's Cove Park. See Def. 56.1 St. ¶ 14. Parks Inspector Campbell included the photograph within the August 13, 2013 Parks Inspection Report Report she generated. See Def. 56.1 St. ¶ 14. At the time of plaintiff's arrest, Officer Ricciardi, Sergeant Friendly, and Officer Zidor were aware of Parks Department signage posted in and around Hallet's Cove Park stating that it was unlawful to be present in Hallet's Cove Park after 9:00 p.m. See Def. 56.1 St. ¶ 15.

On September 8, 2013, Officer Ricciardi observed plaintiff inside of Hallet's Cove Park at approximately 12:20 a.m. See Def. 56.1 St. ¶ 16. Officer Ricciardi believed it was unlawful for plaintiff to be present inside Hallet's Cove Park at that time because Parks Department signage stated that the property closed at 9:00 p.m. . See Def. 56.1 St. ¶ 16. On September 8, 2013, Sergeant Friendly, Officer Ricciardi, and Officer Zidor approached plaintiff and the other individuals on the basis that, among other things, they intended to issue summonses for being unlawfully present in Hallet's Cove Park after 9:00 p.m. . See Def. 56.1 St. ¶ 17. When the officers approached plaintiff, Sergeant Friendly observed plaintiff and the other individuals drinking alcohol. Officer Zidor observed some of the individuals they approached holding plastic

cups, and others drinking out of bottles. See Def. 56.1 St. ¶ 18. Officer Ricciardi observed

multiple bottles of alcohol present among plaintiff and the other individuals with her. Id.

After approaching plaintiff, the officers searched the area on the benches where

plaintiff and the other individuals were sitting. See Def. 56.1 St. ¶ 19. On the floor, the officers

found a bottle of the alcoholic beverage Hennessy. Id. Plaintiff observed Sergeant Friendly

holding the Hennessy bottle in his hand. Id. The officers recovered at least one Hennessy bottle

from where plaintiff and the other individuals were located at the scene of arrest. Id. Hennessy is

a brown alcoholic beverage "that looks like liquor." See Def. 56.1 St. ¶ 20. When Sergeant

Friendly found the Hennessy bottle, he directed plaintiff and the other individuals to produce

identification. See Def. 56.1 St. ¶ 21. Plaintiff was directed to produce so that the officers could

check whether plaintiff had any open warrants in an attempt to issue plaintiff summonses. Id.

Plaintiff refused to provide any identification as directed, despite having an identification card in

her pocket, and then falsely told the officers that she did not have any identification on her

person. See Def. 56.1 St. ¶ 22. Plaintiff repeatedly refused to provide her identification in

response to the officers' requests. See Def. 56.1 St. ¶ 23.

Sergeant Friendly determined that, based in part on a lack of cooperation from

plaintiff, it was necessary to place plaintiff and several of the other individuals under arrest and

transport them to a police precinct. See Def. 56.1 St. ¶ 24. According to plaintiff, Sergeant

Friendly stated, "if nobody has no ID, that everyone is going to jail." Id. When Officer Ricciardi

attempted to place plaintiff under arrest, plaintiff was holding her cellular telephone in her hand.

See Def. 56.1 St. ¶ 25. Plaintiff was sending electronic text messages to an acquaintance when

Officer Ricciardi approached plaintiff to place her under arrest. Officer Ricciardi directed

plaintiff to put her phone away. See Def. 56.1 St. ¶ 26. Plaintiff refused to put her phone away,

and stated, "no, because we [aren't] being arrested." See Def. 56.1 St. ¶ 27. Officer Ricciardi

instructed plaintiff to put her phone away for a second time. <u>See</u> Def. 56.1 St. ¶ 28. Plaintiff again refused to put her phone away. <u>Id.</u> Plaintiff stated to Officer Ricciardi, "I don't have to." <u>Id.</u>

After plaintiff refused two of Officer Ricciardi's orders to put her phone away, Officer Ricciardi took hold of plaintiff's right wrist, in which plaintiff was holding her cellular phone. <u>See</u> Def. 56.1 St. ¶ 29. When Officer Ricciardi took hold of plaintiff's wrist, plaintiff kept her cellular telephone in her hand, and then looked at the cellular telephone in her hand. <u>See</u> Def. 56.1 St. ¶ 30. Plaintiff looked at her cellular telephone when Officer Ricciardi was trying to arrest her "because she was about to text somebody or something." <u>Id.</u> Within 60 seconds of Officer Ricciardi taking hold of plaintiff's right wrist, Officer Ricciardi took his handcuffs out. <u>See</u> Def. 56.1 St. ¶ 31. For approximately five minutes, Officer Ricciardi stood holding plaintiff's right wrist, telling plaintiff to put her cellular telephone down. <u>Id.</u> Once Officer Ricciardi placed plaintiff's hands behind her back and secured the handcuffs, plaintiff finally put her cellular telephone in her pocket. <u>See</u> Def. 56.1 St. ¶ 32. Plaintiff was holding onto her cellular telephone for the entire five minutes when Officer Ricciardi had his hand on plaintiff's wrist. <u>Id.</u> Aside from Officer Ricciardi holding plaintiff's wrist while placing her in handcuffs, there was no additional force used against plaintiff during her arrest. <u>See</u> Def. 56.1 St. ¶ 33. Officer Ricciardi did not cause any bruising or scratching to plaintiff's wrist by holding onto plaintiff's wrist. <u>See</u> Def. 56.1 St. ¶ 34. Plaintiff did not request medical attention from any of the officers. <u>See</u> Def. 56.1 St. ¶ 35. Plaintiff did not seek medical attention for any physical injuries at any time following her arrest. <u>See</u> Def. 56.1 St. ¶ 36.

Plaintiff was arrested on charges of, among other things, possession of an open container of alcohol in a public place in violation of New York City Administrative Code § 10-125. <u>See</u> Def. 56.1 St. ¶ 37. Plaintiff was transported to the 114th Precinct for arrest

processing. <u>See</u> Def. 56.1 St. ¶ 38. At 1:29 a.m. on September 8, 2013, during arrest processing, plaintiff name was searched in the Automated Database Warrant System, or "ADW," a system used by NYPD Officers to determine whether an individual in custody has any outstanding warrants. <u>See</u> Def. 56.1 St. ¶ 39. The search of plaintiff's pedigree information on the ADW system, conducted by Officer Zidor, revealed that plaintiff had an open warrant under Queens Criminal Court Docket No. 2011SQ069669 stemming from a prior open container violation under New York City Administrative Code § 10-125. <u>See</u> Def. 56.1 St. ¶ 40. The discovery of plaintiff's open warrant under Queens Criminal Court Docket No. 2011SQ069669 was recorded in plaintiff's Arrest Report during arrest processing. <u>See</u> Def. 56.1 St. ¶ 41.

On September 8, 2013, plaintiff was arraigned under Queens Criminal Court Docket No. 2013QN050313 on one charge of violating New York City Administrative Code § 10-125. <u>See</u> Def. 56.1 St. ¶ 42. The criminal charges against plaintiff arising from plaintiff's September 8, 2013 arrest were resolved with plaintiff's acceptance of an Adjournment in Contemplation of Dismissal at arraignment. <u>See</u> Def. 56.1 St. ¶ 43.

## STANDARD OF REVIEW

Summary judgment is appropriate if the moving party can demonstrate that "no genuine issue of material fact exists." <u>Jeffreys v. Rossi</u>, 275 F. Supp. 2d 463, 473 (S.D.N.Y. 2003), <u>aff'd</u>, 426 F.3d 549 (2d Cir. 2005); <u>see also</u> Fed. R. Civ. P. 56(c). To defeat a motion for summary judgment, the non-moving party "must raise a genuine issue of material fact" that requires a trial. <u>Jeffreys</u>, 275 F. Supp. 2d at 473. In order to state a genuine issue of fact sufficient to defeat a summary judgment motion, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts, ... and [he] may not rely on conclusory allegations or unsubstantiated speculation." <u>Id.</u> at 473-74 (citations and internal quotes omitted). Rather, the non-moving party "must produce admissible evidence that

supports [his] pleadings." Id. (citing First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289-90 (1968)). Summary judgment is appropriate "if the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, ... or if it is based purely on conjecture or surmise." Savino v. City of New York, 331 F.3d 63, 71 (2d Cir. 2003) (citations and internal quotes omitted).

A motion for summary judgment requires the party with the burden of proof at trial to "make a showing sufficient to establish the existence of [each] element to that party's case, ... since a complete failure of proof concerning an essential element of ... [the] case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (the reviewing court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). Applying these rules, the Second Circuit has stated:

> [T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.

> Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (emphasis in original).

# ARGUMENT

## POINT I

### PLAINTIFF FAILS TO STATE A VIABLE FALSE ARREST CLAIM BECAUSE PLAINTIFF'S ARREST WAS SUPPORTED BY PROBABLE CAUSE.

**A.    Legal Standard Regarding Probable Cause**

To establish a claim for false arrest under § 1983, "a plaintiff must show that the defendant intentionally confined him without his consent and without justification." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted); Minott v. Duffy, 11-CV-1217 (KPF), 2014 U.S. Dist. LEXIS 49791, at *28 (S.D.N.Y. Apr. 8, 2014) (identifying the four elements under New York law as "(i) the defendant intended to confine him, (ii) the plaintiff was conscious of the confinement, (iii) the plaintiff did not consent to the confinement and (iv) the confinement was not otherwise privileged."). Probable cause is "a complete defense" to a § 1983 false arrest claim. Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007). Probable cause to arrest exists when officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999). Courts are to consider the "totality of the circumstances" and "the facts available to the officer at the time of arrest." Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002). The existence of probable cause defeats a claim for false arrest, even if an arrestee is ultimately revealed to be innocent. Pierson v. Ray, 386 U.S. 547, 555 (1967).

Probable cause is an objective inquiry; the subjective beliefs or motivations of the arresting officer are irrelevant. Whren v. United States, 517 U.S. 806, 812-13 (1996). Probable cause requires only a probability, not an actual showing, of criminal activity.  Ricciuti v. New

York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997). Courts have recognized that "[o]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." Panetta v. Crowley, 460 F.3d 388, 396 (2d Cir. 2006). "Where there is more than one officer cooperating in the investigation, the knowledge of each officer is presumed to be shared by all." Abdul-Rahman v. City of N.Y., 10-CV-2778 (ILG), 2012 U.S. Dist. LEXIS 45653, *15 (E.D.N.Y. Mar. 27, 2012) (citing Celestin v. City of New York, 581 F. Supp. 2d 420, 430 (E.D.N.Y. 2008)).

"[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant ... it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006) (citing Devenpeck v. Alford, 543 U.S. 146 (2004)). The underlying offense that establishes probable cause to arrest need not be "'closely related to', [or] based on the same conduct as, the offense identified by the arresting officer." Devenpeck, 543 U.S. at 153-54. See also Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007) ("[A]n arrest is not unlawful so long as the officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances sufficient to provide probable cause to believe [the arrestee] has committed any crime.").

**B.     Plaintiff's Admitted Presence in Hallet's Cove Park after 9:00 p.m. Created Probable Cause for her Arrest.**

Under 56 R.C.N.Y. § 1-03(a)(1), "[p]ersons may enter and use the parks from 6:00 a.m. until 1:00 a.m. unless other open hours are posted at [the] park." Here, there is no dispute that plaintiff was present in Hallet's Cove Park after 9:00 p.m., as plaintiff admitted in her deposition that she entered the park after 9:00 p.m. See Def. 56.1 St. ¶ 2. In fact, when the defendant officers approached plaintiff in Hallet's Cove Park, it was approximately 12:20 a.m.

<u>See</u> Def. 56.1 St. ¶ 4. Furthermore, it is undisputed that, at the time of plaintiff's arrest, Hallet's Cove Park was a property under the jurisdiction of the New York City Parks Department of Parks and Recreation subject to the regulation set forth in 56 R.C.N.Y. § 1-03(a)(1).

The record in the case demonstrates that Parks Department signage prohibited members of the public from accessing Hallet's Cove Park after 9:00 p.m. <u>See</u> Def. 56.1 St. ¶¶ 12-14. The record further establishes that defendant Officer Ricciardi, who placed plaintiff under arrest, was aware that signage posted at the time of plaintiff's arrest prohibited members of the public from accessing Hallet's Cove Park after 9:00 p.m. <u>See</u> Def. 56.1 St. ¶ 15. Officer Ricciardi's uncontested observation of plaintiff inside Hallet's Cove Park at approximately 12:20 a.m. created an objectively reasonable basis to believe that plaintiff was violating the Parks Department regulation set forth in 56 R.C.N.Y. § 1-03(a)(1). Under 56 R.C.N. Y. § 1-07, violations of Parks Department regulations are criminal offenses that give rise to the existence of probable cause to effectuate arrest. <u>See</u> <u>Marlin v. City of N.Y.</u>, 15-CV-2235 (CM), 2016 U.S. Dist. LEXIS 122426 (S.D.N.Y. Sep. 7, 2016) (granting defendants' motion for summary judgment as to false arrest claim based on plaintiff's admitted presence on Parks Department property after posted hours). Given the undisputed fact that plaintiff was present in Hallet's Cove Park in violation of 56 R.C.N.Y. § 1-03(a)(1), plaintiff's arrest was supported by probable cause. Therefore, plaintiff's alleged false arrest claim must fail as a matter of law, and defendants' motion for summary judgment should be granted at to this claim.

**C.      The Officers' Undisputed Discovery of an Open Container of Alcohol In Plaintiff's Proximity Created Probable Cause for Plaintiff's Arrest.**

Additionally, plaintiff's false arrest claim must fail because there was probable cause to arrest plaintiff for violation of New York City Administrative Code § 10-125. When Sergeant Friendly, Officer Ricciardi, and Officer Zidor approached plaintiff and the group of other individuals with plaintiff inside of Hallet's Cove Park, they observed open

containers of alcohol. <u>See</u> Def. 56.1 St. ¶ 18. Plaintiff admitted at deposition that, when the officers approached her in Hallet's Cove Park, they conducted a search of the bench area where plaintiff and the other individuals were sitting. <u>See</u> Def. 56.1 St. ¶ 19. Plaintiff further admitted that, during the search, one of the officers found a bottle of Hennessy, which plaintiff saw Sergeant Friendly holding at the scene of arrest. <u>Id.</u> Thus, it is undisputed that at least one container of alcohol was found in plaintiff's proximity.

Under New York City Administrative Code § 10-125, ""[n]o person shall drink or consume an alcoholic beverage, or possess, with intent to drink or consume, an open container containing an alcoholic beverage in any public place except at a block party or similar function." It is well settled that "open container violations are arrestable offenses, and under New York law, whether probable cause to arrest someone for an open container violation exists "depends on the totality of circumstances at the time of the defendant's arrest, 'which takes into account the realities of everyday life unfolding before a trained officer who has to confront, on a daily basis, similar incidents.'" <u>Wajid Kahlil Al-Qadaffi v. N.Y. City Police Dep't</u>, 16-CV-05422 (BMC)(RLM), 2016 U.S. Dist. LEXIS 143532, *4-*5 n. 3 (E.D.N.Y. Oct. 13, 2016)(citing <u>United States v. Davis</u>, 111 F.Supp.3d 323, 332-333 (E.D.N.Y. 2015)).

Moreover, under New York State law, possession of unlawful contraband need not be physical; "[w]here there is evidence to believe that a person is in constructive possession of contraband, the arresting officer has probable cause to arrest." <u>Caraballo v. City of N.Y.</u>, 10-CV-1885 (SJ) (RML), 2012 U.S. Dist. LEXIS 188902, *6 (E.D.N.Y. June 21, 2012)(aff'd <u>Caraballo v. City of N.Y.</u>, 526 F. App'x 129 (2d Cir. 2013)). A person "constructively possesses tangible property when he exercises dominion and control over the property with a sufficient level of control over the area in which the contraband is found." <u>Torres v. Hanslmaier</u>, 94-CV-4082 (MGC), 1995 U.S. Dist. LEXIS 6193, at *6-7, (S.D.N.Y. May 8, 1995).

The record demonstrates that there was probable cause to arrest plaintiff for possession of an open container of alcohol in public under New York City Administrative Code § 10-125. There is no dispute that plaintiff was seated with a group of other individuals on a bench in Hallet's Cove Park, and that the Hennessy bottle was discovered within close proximity to plaintiff when the officers searched the ground by the bench. See Def. 56.1 St. ¶ 19. Even if plaintiff disclaims ownership or physical possession of the Hennessy bottle found in her proximity, it was nevertheless objectively reasonable for an officer under the circumstances to believe that plaintiff had constructive possession of the container. This is especially true given that the probable cause inquiry under New York City Administrative Code § 10-125, must "take[] into account the realities of everyday life unfolding before a trained officer who has to confront, on a daily basis, similar incidents." Davis, 111 F.Supp.3d at 332-333. Under the circumstances, the officers' undisputed discovery of the liquor bottle created objectively reasonable probable cause to believe that plaintiff was committing a violation of New York City Administrative Code § 10-125. Therefore, plaintiff's alleged false arrest claim fails as a matter of law, and defendants' motion for summary judgment should be granted at to this claim.

**D.  Plaintiff's False Arrest Claim Fails Because She Had Two Open Arrest Warrants on the Date of Her September 8, 2013 Arrest.**

Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 144, n.3 (1979). The first step in any such claim is to identify the specific constitutional right allegedly infringed. See Graham v. Connor, 490 U.S. 386, 394, (1989). Here, plaintiff alleges that she was falsely arrest on September 8, 2013, which is analyzed as a violation of plaintiff's right to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution. However, in light of the two open warrants for plaintiff's arrest in effect on

September 8, 2013, plaintiff cannot establish that she had a right to be free from the seizure giving rise to her false arrest claim in this action.

It is well settled under federal law that an arrest warrant "authorizes the police to deprive a person of his liberty." Dockery v. Tucker, 97-CV-3584 (ARR), 2006 U.S. Dist. LEXIS 97826, *67, (E.D.N.Y. Sept. 6, 2006) (citing Steagald v. United States, 451 U.S. 204, 214 n.7 (1981)). Under New York law, "[a]n arrest is privileged if it is made pursuant to a lawful warrant." Andersen v. United States, 98-CV-4782 (ADS), 2001 U.S. Dist. LEXIS 24469, at *33 (E.D.N.Y. July 20, 2001). Courts within the Second Circuit have held that if police officers uncover, during the course of an unlawful arrest, evidence that makes an arrestee's confinement privileged (i.e. probable cause), then that arrestee "may [be] entitled" to damages only stemming from "the brief invasion [] related to the seizure and initial search of [the arrestee]." See Townes v. City of New York, 176 F.3d 138, 149 (2d Cir. 1999). See Morgan v. City of New York, 12-CV-704, 2014 U.S. Dist. LEXIS 94693, *13, (E.D.N.Y. July 10, 2014) ("The Court reminds the parties that because probable cause existed once the knife was found on Plaintiff's person, Plaintiff may only seek recovery for damages that accrued from the time of the stop until the moment that the knife was found."); Kennedy v. City of New York, 11-CV-1451 (ERK), 2013 U.S. Dist. LEXIS 96096, at *4 (E.D.N.Y. July 10, 2013) (plaintiff's "subsequent arrest was clearly supported by probable cause and therefore caused no damages for which he could recover.").

The Second Circuit and the United States Supreme Court have not yet addressed the issue of whether an open warrant precludes a false arrest claim when the arresting officer lacks knowledge of the warrant. See Utah v. Strieff, 579 U.S. __ (2016) ("[W]e also have no need to decide whether the warrant's existence alone would make the initial stop constitutional

even if Officer Fackrell was unaware of its existence."). However, the Seventh Circuit Court of Appeals addressed this exact issue in <u>Banks v. Fuentes</u>. <u>See</u> 545 Fed. Appx. 518 (7th Cir. 2013).

In <u>Banks</u>, two Chicago police officers conducted a stop of a car driven by Larry Banks. <u>Id.</u> Following the car stop, the officers checked Mr. Banks' name in their computer system and discovered that an investigative alert had been previously issued for Mr. Banks in connection with a complaining victim identifying Mr. Banks as the assailant of a shooting. <u>Id.</u> at 519. Mr. Banks was then arrested. <u>Id.</u> Thereafter, Mr. Banks filed a federal civil rights action pursuant to § 1983 alleging that the police officers had no justification to initially stop his car or take him into custody. <u>Id.</u> The district court thereafter granted summary judgment in favor of the police officers. <u>Id.</u> Mr. Banks, proceeding *pro se*, then appealed to the Seventh Circuit Court of Appeals. <u>Id.</u>

In affirming the district court, the Seventh Circuit acknowledged the proposition that "the validity of a traffic stop turns on what the police knew before executing the stop," and that the police officers "were unaware of the investigative alert before they stopped [Mr.] Banks," but stated that "the fact remains that the alert already has been issued based on a determination of probable cause. Although it is true that the [police officers] personally were unaware of the investigative alert before they stopped [Mr.] Banks…what was known to other Chicago Police Officers was, under the doctrine of collective knowledge, deemed to be known by the [defendant police officers]." <u>Id.</u> The Seventh Circuit reasoned that "someone with an outstanding warrant has no right to be at large, and so suffers no infringement of his rights when he is apprehended." <u>Id.</u> (internal citation omitted). The Seventh Circuit further reasoned that "[l]ike a warrant, the investigative alert authorized [Mr.] Banks's arrest because other officers already had made a determination of probable cause." <u>Id.</u> Accordingly, the Seventh Circuit held that because there was an open investigation alert at the time of Mr. Banks' stop, "there was no

infringement of [Mr.] Banks's right when the officer stopped him and took him into custody, even if they were mistaken in believing that [he committed an unlawful act]."

The Seventh Circuit's analysis in <u>Banks</u> should be adopted in this case because it is aligned with both the Fourth Amendment's prohibition on only "unreasonable" seizures, and with Supreme Court precedent. <u>See</u> <u>Hudson</u>, 547 U.S. at 593 (once "a valid warrant has issued," the subject of the warrant is no longer "entitled to shield [his] person[]… from the government's scrutiny."); <u>see also</u> <u>Atkins v. City of Chicago</u>, 631 F.3d 823, 827 (7th Cir. 2011) ("If police stopped cars randomly, looking for persons against whom there were outstanding warrants, the drivers and passengers not named in warrants would have good Fourth Amendment claims. But a person named in a valid warrant has no right to be at large, and so suffers no infringement of his rights when he is apprehended unless some other right of his is infringed. . .").

As stated above, plaintiff may only vindicate the violation of a constitutional right via § 1983. However, here, plaintiff had an active arrest warrant on the date of her arrest, which meant that plaintiff had no right to be free from seizure on September 8, 2013. As such, plaintiff's arrest on September 8, 2013 cannot be classified as "unreasonable," because the judiciary had already determined that there was probable cause to seize plaintiff for an unrelated criminal matter. Accordingly, when plaintiff during the incident giving rise to this action, she suffered no infringement of her Fourth Amendment rights as a matter of law, as she did not possess a right to be at large. <u>See</u> <u>Banks</u>, 545 Fed. Appx. 518; <u>Giddeon v. Flynn</u>, 14-CV-331 (RTR), 2015 U.S. Dist. LEXIS 143124, *12-13 (E.D. Wis. Oct. 20, 2015); <u>Turner v. City of Chicago</u>, 12-CV-9994 (MSS), 2015 U.S. Dist. LEXIS 159139, *15 (N.D. Ill. Nov. 25, 2015). Thus, plaintiff's false arrest claim fail as a matter of law, and defendants' motion for summary judgment should be dismissed at to this claim.

**POINT II**

**DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FROM PLAINTIFF'S FALSE ARREST CLAIM BECAUSE PLAINTIFF'S ARREST WAS SUPPORTED BY ARGUABLE PROBABLE CAUSE.**

**A.    Legal Standard Regarding Qualified Immunity.**

Alternatively, even if actual probable cause did not exist for plaintiff's arrest, there was, at a minimum, arguable probable cause to arrest plaintiff, and, thus, defendants are entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions, such as arrests, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." McKay v. City of New York, 13-CV-2948 (JGK), 32 F. Supp. 3d 499 (S.D.N.Y. 2014) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). An officer is entitled to qualified immunity if he had "arguable probable cause" to effectuate the arrest, which means that "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Amore v. Novarro, 624 F.3d 522, 536 (2d Cir. 2010). "An officer's actions are objectively unreasonable when *no* officer of reasonable competence could have made the same choice in similar circumstances." Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995) (emphasis added). Qualified immunity is applicable regardless of "whether a government actor's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citations omitted).

Furthermore, the Supreme Court has recognized that the standard of qualified immunity is a forgiving one, as "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those

who knowingly violated the law." <u>Messerschmidt v. Millender</u>, 132 S. Ct. 1235, 1244 (2012) internal quotations marks omitted). The U.S. Supreme Court recently "reiterate[d] the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" <u>White v. Pauly</u>, 2017 U.S. LEXIS 5, *8 (U.S. Jan. 9, 2017)(citing <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 742 (2011)). The Court observed that, in order for a right to be clearly established for purposes of denying qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." <u>Pauly</u>, 2017 U.S. LEXIS 5, *8 (U.S. Jan. 9, 2017). The Court further cautioned that "qualified immunity is important to 'society as a whole,' and ... as 'an immunity from suit,' qualified immunity 'is effectively lost if a case is erroneously permitted to go to trial.'" <u>Id.</u> (citing <u>Anderson v. Creighton</u>, 483 U. S. 635, 640 (1987)).

At the summary judgment stage, dismissal of a false arrest claim is appropriate "as long as officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context." <u>Walczyk v. Rio</u>, 496 F.3d 139, 154 (2d Cir. 2007)(quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)). In the context of an arrest based on constructive possession, an officer is entitled to qualified immunity provided that "the[] circumstances were arguably sufficient to warrant a prudent person to believe that the plaintiffs 'had knowledge of, and exercised dominion and control over,' the suspected contraband." <u>Caraballo</u>, 526 F. App'x at 130 (citing <u>Maryland v. Pringle</u>, 540 U.S. 366, 372 (2003).

**B.     Defendants Are Entitled to Qualified Immunity as to Plaintiff's False Arrest Claim.**

Even assuming plaintiff's September 8, 2013 arrest was not supported by actual probable cause, the totality of circumstances demonstrates that plaintiff's arrest was supported by arguable probable cause. It is undisputed that, on the date of plaintiff's arrest, Officer Ricciardi, Sergeant Friendly, and Officer Zidor believed there to be Parks Department signage posted in

and around Hallet's Cove Park stating that it was unlawful to be present in Hallet's Cove Park after 9:00 p.m. <u>See</u> Def. 56.1 St. ¶ 15. The officers' belief is confirmed by both the contents of the August 13, 2013 Parks Inspection Program Report documenting the presence of two signs posting the park's closing time, as well as the deposition testimony of the Parks Department official who prepared the report. <u>See</u> Def. 56.1 St. ¶¶ 12-15. Given the officers' knowledge of the 9:00 p.m. closing time that was apparently in effect in Hallet's Cove Park on the date of plaintiff's arrest, plaintiff cannot demonstrate that "*no* officer of reasonable competence could have made the same choice in similar circumstances." <u>Lennon</u>, 66 F.3d 416, 420-21.

Similarly, given plaintiff's admission that the officers discovered a bottle of Hennessy liquor in plaintiff's proximity during their search of the area where plaintiff was sitting, plaintiff cannot show the officers' belief that plaintiff was in constructive possession of the liquor bottle was objectively unreasonable. At a minimum, officers of reasonable competence could disagree as to whether plaintiff had constructive possession of the Hennessy bottle found in her proximity. The record does not establish that existing precedent placed the question beyond debate whether plaintiff constructively possessed the Hennessy bottle found in her proximity. Thus, defendants are entitled to qualified immunity from plaintiff's false arrest claim, and defendants' motion for summary judgment should be granted as to this claim.

**POINT III**

**PLAINTIFF FAILS TO STATE A VIABLE EXCESSIVE FORCE CLAIM.**

**A.  Legal Standard Regarding Excessive Force**

"The Supreme Court has recognized that the effectuation of a custodial arrest necessarily carries with it the right to use some degree of physical coercion." <u>Smith v. City of New York</u>, 04-CV-3286 (TPG), 2010 U.S. Dist. LEXIS 88774, *26 (S.D.N.Y. Aug. 27, 2010). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's

chambers, violates the Fourth Amendment." <u>Id.</u> "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, so as to allow for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989).

"The Second Circuit and district courts in the Circuit recognize the concept of 'de minimis' injury and, when the injury resulting from alleged excessive force falls into that category, the excessive force claim is dismissed." <u>Lemmo v. McKoy</u>, 08-CV-4264 (RJD), 2011 U.S. Dist. LEXIS 23075, at *14-*15 (E.D.N.Y. Mar. 8, 2011). "Injuries held to be *de minimis* for purposes of defeating excessive force claims include short-term pain, swelling, and bruising, brief numbness from tight handcuffing, claims of minor discomfort from tight handcuffing, and two superficial scratches with a cut inside the mouth." <u>Milo v. City of N.Y.</u>, 59 F. Supp. 3d 513, 522 (E.D.N.Y. 2014). <u>See</u> <u>also</u> <u>Sullivan v. City of New York</u>, 10-CV-0038 (NRB), 2011 U.S. Dist. LEXIS 96461, at *11 (S.D.N.Y. Aug. 29, 2011) (noting that de *mininis injuries* include "temporary swelling" and "inflammation or soreness of an arrestee's wrists"). Moreover, even where the *de minimis* nature of the plaintiff's alleged injuries is not dispositive, "it is nonetheless 'highly relevant' to the inquiry about whether the force applied was reasonable." <u>Marlin</u>, 2016 U.S. Dist. LEXIS 122426 at *34.

**B.** **Officer Ricciardi's Alleged Force Against Plaintiff Was Not Excessive.**

It is undisputed that the only force used against plaintiff during her arrest was Officer Ricciardi taking hold of plaintiff's wrist while placing her in handcuffs. <u>See</u> Def. 56.1 St. ¶¶ 29-33. Plaintiff admitted at her deposition that she refused multiple orders to put her cellular phone away while Officer Ricciardi was attempting to effectuate her arrest. ¶¶ 25-28. In fact,

plaintiff admits that she willfully refused to comply with Officer Ricciardi's orders based on her unilateral assessment that she, "didn't have to," and because she "[wasn't] being arrested." ¶¶ 27-28. Plaintiff's admitted refusal to put down the cellular telephone in her hand while Officer Ricciardi was attempting to handcuff her necessitated some level of force to gain compliance. Given plaintiff's admitted non-compliance, plaintiff fails to demonstrate that Officer Ricciardi's conduct of taking hold of her wrist was excessive under the circumstances.

## C. Plaintiff's Alleged *De Minimis* Injury is Insufficient to Support an Excessive Force Claim.

Moreover, plaintiff's sole alleged injury resulting from Officer Ricciardi is short term pain to plaintiff's wrist, which falls squarely within the category of *de minimis* injuries that cannot support an excessive force claim as a matter of law. It is undisputed, based on plaintiff's own admissions, that Officer Ricciardi did not cause any bruising or scratching to plaintiff's wrist by holding onto plaintiff's wrist. See Def. 56.1 St. ¶ 34. Additionally, the *de minimis* nature of plaintiff's alleged injury is further reinforced by the undisputed facts that plaintiff did not request medical attention from any of the officers, and did not seek medical attention for any physical injuries at any time following her arrest. See Def. 56.1 St. ¶¶ 35-36. Plaintiff's lack of any injuries beyond short term pain in her wrist weighs heavily in favor of finding that the force Officer Ricciardi used to place plaintiff in handcuffs was objectively reasonable under the circumstances. As such, plaintiff fails to state a viable excessive force claim, and defendants' motion for summary judgment should be granted as to this claim.

## D. Officer Ricciardi is Entitled to Qualified Immunity for the Alleged Force Used.

"It is well established that qualified immunity may operate as a defense to excessive force claims." Mesa v. City of New York, 09-CV-10464 (JPO), 2013 U.S. Dist. LEXIS 1097 (S.D.N.Y. Jan. 3, 2013). "[I]n the excessive force context, the question for the purposes of qualified immunity is whether a reasonable officer could have believed that the use

of force alleged was objectively reasonable in light of the circumstances." Read v. Town of Suffern Police, 10-CV-9042 (JPO), 2013 U.S. Dist. LEXIS 89189, *22 (S.D.N.Y. June 25, 2013). An officer is entitled to qualified immunity provided that "the force used by the officer [is] reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000). In light of plaintiff's admitted non-compliance with Officer Ricciardi's repeated instructions for plaintiff to release the cellular telephone she was holding in her hand, Officer Ricciardi's response of taking hold of plaintiff's wrist to place plaintiff in handcuffs "was reasonable related to the nature of the resistance" that plaintiff presented. Plaintiff even admitted at deposition that, once she finally put her cellular telephone away and plaintiff's handcuffs were secured, no additional force was used against her. See Def. 56.1 St. ¶¶ 32-33. Therefore, at a minimum, Officer Ricciardi is entitled to qualified immunity as to plaintiff's excessive force claim, and summary judgment should be granted as to this claim.

**POINT IV**

**PLAINTIFF FAILS TO STATE A VIABLE**
**FAILURE TO INTERVENE CLAIM.**

Plaintiff's Second Amended Complaint alleges a claim for failure to intervene in wholly conclusory terms. See Second Amended Complaint, Exhibit A to Noble Decl., ¶¶ 47-51. The Second Amended Complaint does not specify whether the failure to intervene claims are premised on the underlying violation of plaintiff's right to be free from false arrest, or whether they are premised on violation of plaintiff's right to be free from excessive Force. Moreover, plaintiff fails to specify how any of the individual defendant officers caused such a violation by failing to intervene.

To the extent plaintiff alleges that Officer Ricciardi falsely arrested plaintiff at the direction of Sergeant Friendly, neither Officer Ricciardi nor Sergeant Friendly can be

simultaneously held liable for failing to intervene to prevent plaintiff's arrest. It is well settled that a claim for failure to intervene "requires that the officer against whom such a claim is asserted *is not the same individual* whom plaintiff alleges is violating [his] constitutional rights." Salazar v. City of New York, 15-CV-1989 (KBF), 2016 U.S. Dist. LEXIS 89774, at *22 (S.D.N.Y. July 11, 2016) (emphasis added) (citing Anderson, 17 F.3d at 557. Likewise, to the extent plaintiff alleges that Officer Ricciardi failed to intervene to prevent plaintiff from being subjected to excessive force, such a claim fails because Officer Ricciardi is the only defendant who allegedly used force against plaintiff. "Of course, where the officer is a direct participant in the allegedly excessive use of force, the failure to intervene theory of liability is inapplicable." Cuellar, 2014 U.S. Dist. LEXIS 51622, at *23 (citing Simon v. City of New York, 09-CV-1302 (ENV) (RER), at *12, 2011 U.S. Dist. LEXIS 9515, at *39-40 (E.D.N.Y. Jan. 3, 2011).

Furthermore, to the extent plaintiff alleges that any of the officers failed to intervene to prevent each other's allegedly unlawful conduct, plaintiff's alleged failure to intervene claims must fail due to the lack of any underlying constitutional violation. "There can be no failure to intervene claim where there was no underlying constitutional violation." See Feinberg v. City of New York, 99-CV-12127 (RCC), 2004 U.S. Dist. LEXIS 16098, at *12 (S.D.N.Y. Aug. 13, 1999) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). As set forth above in Sections I, II, and III, plaintiff fails to establish that she was either falsely arrested or subjected to excessive force. Thus, plaintiff's alleged failure to intervene claims must fail, and defendants' motion for summary judgment should be dismissed as to these claims.

**POINT V**

**PLAINTIFF FAILS TO STATE A VIABLE CLAIM AGAINST THE CITY OF NEW YORK.**

A municipality may not be held liable under § 1983 on the basis of *respondeat superior*. Monell v. Department of Social Services, 436 U.S. 658, 690-91 (1978). Rather, "[t]he plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries . . . Second, the plaintiff must establish a causal connection – an affirmative link – between the policy and deprivation of his constitutional rights." Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985). Therefore, in order to establish municipal liability, plaintiff must establish that an identified municipal policy or practice was the "moving force [behind] the constitutional violation." Monell, 436 U.S. at 694. Assuming plaintiff satisfies this initial burden, he must also establish an affirmative link between this "policy" and his specific constitutional deprivations. Vippolis, 768 F.2d at 44.

As an initial matter, there can be no municipal liability under Monell where the plaintiff fails to allege a valid underlying constitutional deprivation. Johnson v. City of New York, 551 Fed. Appx. 14, 15, 2014 U.S. App. LEXIS 1137, 2014 WL 223432, at *1 (2d Cir. Jan. 22, 2014) ("Because [plaintiff] has not alleged a valid underlying constitutional deprivation, his claim against New York City pursuant to [*Monell*] must also fail.") Here, as set forth above, the record demonstrates that plaintiff fails to establish any underlying violation of her constitutional rights, and plaintiff's alleged § 1983 claim against the City of New York must fail.

Moreover, even assuming that plaintiff established that her rights to be free from false arrest or excessive were violated, plaintiff has adduced no evidence showing that such a violation was caused by a policy or practice of defendant City. To state a claim for municipal liability, a plaintiff must allege plausibly one of four different types of violations:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by the government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policy makers to train or supervise subordinates.

Harper v. City of N.Y., 11-CV-4333 (CM), 2013 U.S. Dist. LEXIS 14951, *9-10 (S.D.N.Y. Jan. 30, 2013) (quoting McLaurin v. New Rochelle Police Officers, 373 F. Supp. 2d 385, 399-400 (S.D.N.Y. 2005)). If a plaintiff is unable to plead and establish one of the above municipal liability will not attach. See Prowisor v. Bon-Ton, 426 F. Supp. 2d 165, 174 (S.D.N.Y. 2006).

Here, the record contains no evidence showing the existence of a municipal policy or practice that caused the violation of plaintiff's constitutional rights. The Second Amended Complaint alleges includes over 50 paragraphs of factual allegations that the City of New York fails to properly supervise its police officers, citing to a disjointed collection of news articles, unsubstantiated allegations in prior civil lawsuits, and investigative reports purporting to show that NYPD Officers have engaged in unconstitutional conduct. See Second Amended Complaint, Exhibit A to Noble Decl., ¶¶ 52-104. However, plaintiff has adduced no evidence to support these allegations.

In order to prevail on a failure to train or supervise theory, plaintiff must adduce evidence to show "[a] pattern of similar constitutional violations by untrained employees[.]" Connick v. Thompson, 131 S. Ct. 1350, 1354 (2011). Plaintiff must allege such a pattern because a single instance of a purported constitutional violation is insufficient to put a policy maker on notice that there is a need for additional training in a particular area. See Connick, 131 S. Ct. at 1360. In addition to deliberate indifference, a plaintiff ultimately must identify "a specific deficiency in the city's training program and establish that that deficiency is 'closely related to

the ultimate injury,' such that it 'actually caused' the constitutional deprivation.'" <u>Amnesty Am.</u> <u>v. Town of W. Hartford</u>, 361 F.3d 113, 129 (2d Cir. 2004) (citation omitted).

In this case, plaintiff fails to identify a specific deficiency in the NYPD's training that led to a deprivation of her right to be free from false arrest or excessive force. Plaintiff's citations to the various publications cited in the Second Amended fall far short of plaintiff's burden to demonstrate that, at the time of plaintiff's September 8, 2013 arrest, the City of New York was on notice of a widespread pattern of similar incidents of unconstitutional conduct, as is required to support a <u>Monell</u> claim based on failure to supervise. Plaintiff simply alleges, without supporting evidence in the record, that the City's lack of oversight gives rise to a generalized pattern of constitutional violations. The record does not demonstrate any genuine issue of material fact requiring trial as to plaintiff's alleged <u>Monell</u> claim. Therefore, defendants' motion for summary judgment should be granted as to this claim.

## CONCLUSION

For the foregoing reasons, defendants City, Friendly, Ricciardi, and Zidor request that the Court grant their motion pursuant to Rule 56 of the Federal Rules of Civil Procedure, and for any other fair and equitable relief that the Court may deem appropriate.

Dated: New York, New York
May 5, 2017

ZACHARY W. CARTER
Corporation Counsel for the
  City of New York
*Attorney for Defendants City, Friendly, Ricciardi, and Zidor*
100 Church Street, Room 3-310
New York, New York 10007
(212) 356-2357

By: _____/s/_____
    Alexander Noble
    Assistant Corporation Counsel
    Special Federal Litigation Division

**VIA ECF & FIRST CLASS MAIL**
TO:   Ryan Lozar
      305 Broadway, 10th Floor
      New York, NY 10007
      ryanlozar@gmail.com