UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

15 CV 6511 (JBW) (PK)

KATRINA PEEPLES,

       Plaintiff,

       -against-

CITY OF NEW YORK, NYPD SERGEANT DENNIS
FRIENDLY,     NYPD     OFFICER     ANTHONY
RICCIARDI, NYPD OFFICER MIKELANG ZIDOR,
et al.,

       Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND CROSS-MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' CLAIM THAT THEY HAD PROBABLE CAUSE TO ARREST HER FOR BEING IN A PARK PAST HOURS**

**Table of Contents**

I.    Statement of Facts ................................................................................................. 1

II.   Argument ............................................................................................................... 6

a.    A Reasonable Jury Could Find False Arrest .................................................... 6

b.    A Reasonable Jury Could Find Excessive Force ............................................ 15

c.    A Reasonable Jury Could Find Failure To Intervene .................................... 17

d.    A Reasonable Jury Could Find Monell Liability ............................................ 17

III.  Conclusion ........................................................................................................... 20

## Table of Authorities

**Cases**

Atkins v. City of New York, 143 F.3d 100 (2d Cir. 1998) ................................................................ 17, 18

Banks v. Fuentes, 545 F. App'x 518 (7th Cir. 2013).................................................................................15

Best v. Nurse, No. 99 Civ. 3727 (JBW), 1999 WL 1243055 (E.D.N.Y. Dec. 16, 1999) ....................18

Black v. Town of Harrison, No. 02 Civ. 2097, 2002 WL 31002824 (S.D.N.Y. Sept. 5, 2002)..........17

Brome v. City of N.Y., 2004 WL 502645 (S.D.N.Y. Mar. 15, 2004) ......................................................15

Bryant v. Serebrenik, 2016 WL 6426372 (E.D.N.Y. Oct. 28, 2016)................................................. 16, 17

Budgar v. State, 98 Misc. 2d 588 (N.Y. Ct. of Claims, Mar. 8, 1979) ....................................................18

Caraballo v. City of New York, No. 10 Civ. 1885 (SJ) (RML), 2012 12883307 (E.D.N.Y. June 26, 2012), aff'd, 526 F. App'x 129 (2d Cir. 2013)............................................................................................9

Coggins v. Buonara, 776 F.3d 108 (2d Cir. 2015)...................................................................................16

Davis v. Velez, 797 F.3d 192 (2d Cir. 2015) ...........................................................................................17

Dickerson v. Napolitano, 604 F.3d 732 (2d Cir. 2010).............................................................................8

Dowling v. City of N.Y., No. 11 Civ. 4954, 2013 WL 5502867 (E.D.N.Y. Sept. 30, 2013) ...............17

East Coast Novelty Co., Inc. v. City of N.Y., 809 F.Supp. 285 (S.D.N.Y. 1992)..................................14

Graham v. City of N.Y., 928 F. Supp.2d 610 (E.D.N.Y. 2013)...........................................................8, 18

Graham v. Connor, 490 U.S. 386 (1989) ................................................................................................17

Jean-Laurent v. Wilkinson, 540 F. Supp.2d 501 (S.D.N.Y. 2008)..........................................................19

Jeffreys v. City of N.Y., 426 F.3d 549 (2d Cir. 2005) ...............................................................................9

Jenkins v. City of N.Y., 478 F.3d 76 (2d Cir. 2007) ................................................................................15

Jovanovic v. City of N.Y., 486 F. App'x 149  (2d Cir. June 20, 2012)....................................................16

Keller v. Sobolewski, No. 10 Civ. 5198, 2012 WL 4863228 (E.D.N.Y. Oct. 12, 2012)......................17

Lemmo v. McKoy, No. 08 Civ. 4264 (RJD), 2011 WL 843974 (E.D.N.Y. Mar. 8, 2011)..................18

Marlin v. City of N.Y., 2016 WL 4939371 (S.D.N.Y. Sept. 7, 2016).........................................13

Matter of Andre JJ, 202 A.D.2d 713 (3d Dep't 1994) .......................................................10

Mendez v. City of New York, 127 A.D.3d 468 (1st Dep't 2016)..............................................10

Mitchell v. City of N.Y., 841 F.3d 72 (2d Cir. 2016)..........................................................8

Moody v. Daggett, 429 U.S. 78 (1976)......................................................................15

Nimkoff v. Dollhausen, 751 F. Supp.2d 455 (E.D.N.Y. 2010).................................................19

People v. Breshnian, 133 Misc. 2d 1100 (N.Y. Sup. Ct., Crim. Term, Queens Cty., Dec. 5, 1986)..10

People v. Russell, 34 N.Y.2d 261 (1974)....................................................................10

Ricciuti v. City of N.Y., 124 F.3d 123 (2d Cir. 1997) ......................................................16

Rucks v. City of N.Y., 96 F. Supp.3d 138 (S.D.N.Y 2015)....................................................16

Salazar v. City of N.Y., 2016 WL 3748499 (S.D.N.Y. July 11, 2016) .........................................19

State v. A.T.P.R., 132 Wash. App. 181 (Div. 3 1986) .......................................................11

Suss v. American Society for Prevention of Cruelty to Animals, 823 F. Supp.181 (S.D.N.Y. 1993)
...................................................................................................15

Torres v. Hanslmaier, No. 94 Civ. 4082 (MGC), 1995 WL 272527 (S.D.N.Y. May 8, 1995) ..............9

U.S. v. Irving, 2009 WL 4280287 (EDNY Nov. 25, 2009) ....................................................11

Uzoukwu v. Krawiecki, 2016 WL 6561300 (S.D.N.Y. Nov. 4, 2016)............................................12

Vann v. City of N.Y., 72 F.3d 1040 (2d Cir. 1995)..........................................................20

Wilson v. City of N.Y., No. 06 Civ. 0229 (ARR) (VVP), 2010 WL 3585906 (E.D.N.Y. Sept. 7,
2010) .............................................................................................15

**Statutes**

56 R.C.N.Y. § 1-03(a)(1) ........................................................................................................11

N.Y. Pen. Law § 220.00(1) ....................................................................................................10

N.Y. Pen. Law § 220.25(2) ....................................................................................................10

N.Y.C. Admin. Code § 10-125(b) ...........................................................................................8

**Rules**

7th Cir. R. 32.1(b) ................................................................................................................15

Fed. R. Civ. P. 15(b)(2) ........................................................................................................16

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

KATRINA PEEPLES,

        Plaintiff,

        -against-

CITY OF NEW YORK, NYPD SERGEANT DENNIS
FRIENDLY, NYPD OFFICER ANTHONY
RICCIARDI, NYPD OFFICER MIKELANG ZIDOR,
et al.,

        Defendants.

-------------------------------------------------------------------------x

15 CV 6511 (JBW) (PK)
**PLAINTIFF'S
MEMORANDUM OF LAW IN
OPPOSITION TO
DEFENDANTS' MOTION
FOR SUMMARY
JUDGMENT, AND CROSS-
MOTION FOR SUMMARY
JUDGMENT ON
DEFENDANTS' CLAIM
THAT THEY HAD
PROBABLE CAUSE TO
ARREST HER FOR BEING IN
A PARK PAST HOURS**

Plaintiff Katrina Peeples filed this Section 1983 lawsuit against Defendant City of New York, Defendant NYPD Sergeant Dennis Friendly, Defendant NYPD Officer Anthony Ricciardi and Defendant NYPD Officer Mikelang Zidor, alleging that Defendants violated her rights under the United States Constitution. Docket No. 45. Defendants have moved for summary judgment, Docket Nos. 53-57, which Ms. Peeples herein opposes. In opposing one aspect of Defendants' summary judgment motion on her false arrest claim, Peeples' argument shows that she is entitled to summary judgment on one of Defendants' "alternative theor[ies]" for her arrest and asks the Court to rule in her favor as a matter of law on the question of whether Defendants had cause to arrest her for being in a park after "special hours" that they have not shown were posted.

## I. Statement of Facts

Plaintiff, a forty-something mom, has lived since 2007 in an apartment next to a baseball diamond ("Field") at Astoria Houses in Queens. Exh. 1 at 13; Exh. 18 (various photographs showing the proximity of Plaintiff's home and the Field). Previously, she lived for many more years in another building at Astoria Houses, spending much of her girlhood there. Id. at 30-33. As

a result, she has many lifelong friends who she met as neighbors, among them Tameka Jackson and Taniqua Harris. Id.

On September 8, 2013, the Saturday night before the school year started, Plaintiff had dinner with her children, then met Jackson and Harris to sit on a bench on the Field next to Plaintiff's home where they spent time together since they were kids, and where they often sat. Id. at 27. Plaintiff, Jackson and Harris ran into Joanna Ceruti, another friend that Plaintiff has known since girlhood, who was walking with Adaishia Simpson, Melissa (Bridgett) Cooper and Ebony Perry. Id. at 36, 65. The group of seven women sat on the bench and talked together. Id. at 70; Exh. 18 (various photos showing the proximity of the bench on the Field and Plaintiff's home).

The Field is one part of a multi-use park that includes a handball court, a basketball court, a comfort station, a kayak launch, a children's playground equipment area, and the Field. Exh. 3 at 118; Exh.18; Exh. 27. Each of the various areas of the multi-use park has its own entrances and enclosures. Exh. 3 at 130-31.

At about 12:15 a.m., Defendants Friendly, Ricciardi and Zidor, who were patrolling the area, stopped their car directly behind the women; got out; walked up to them in about thirty seconds and immediately demanded everyone's identifications. Exh. 1 at 75; Exh. 3 at 123 (Ricciardi testifying that Defendants saw the women in the Field sub-area of the park); Exh. 5 at 119 (Zidor testifying that it took the officers thirty seconds to walk to the women from where their vehicle was); Exhs. 9-11; Exh. 22. Plaintiff objected to the interruption as the police had no justification for bothering the women, and continued looking at her telephone as she had been doing before Defendants' arrival. Exh. 1 at 77-78. In response to Plaintiff's questioning the police's authority to bother the seven women, Ricciardi went directly to Plaintiff, grabbed her wrist and hand, and twisted it "for no

2

reason," attempting to wrench the telephone out of her grasp. Exh. 1 at 81-85; Exh. 2 at 153-157, 173; Exh. 7 (Harris testifying that officers pushed Plaintiff).

Jackson and Harris protested against Ricciardi hurting Plaintiff in this manner. Exh. 1 at 86; Exh. 2 at 161. Ricciardi then, on Friendly's direction, snapped handcuffs onto Plaintiff. Exh. 1 at 88. He did this very tightly, gratuitously causing her more needless pain. Id. at 82-93. She asked for the handcuffs to be loosened. Id. at 83. He refused to answer, and stood there and held tightly onto her. Id. at 83, 95.

All this time, Friendly, who had at no time observed the women in possession of anything unlawful, had been searching around the Field with his flashlight. Exh. 2 at 159-60, 164, 167. After Ricciardi had handcuffed Plaintiff on Friendly's instruction, Friendly and other officers continued searching around and, eventually, Friendly found a discarded Hennessy bottle he had found. Id. at 167; Exh. 17 at D190 (Parks Department inspection report noting heavy litter). This bottle did not belong to any of the seven women. Exh. 2 at 168. Plaintiff saw the empty bottle for the first time when Friendly held it up after finding it elsewhere on the Field. Id. at 169. Defendants then began handcuffing all of the women. Exh. 2 at 166.

Defendants took the group of middle-aged moms to the precinct. Defendants began to swear out charges against the women for open-container violations. They falsely stated that they had observed every single woman in possession of a 375-ml bottle of Hennessy. Exh. 7 (Harris testifying: "None of us had a bottle of cognac. How could all seven of us have one bottle of cognac."); Exh. 12 (Ricciardi and Zidor stating under oath that they observed Simpson, Perry, Ceruti, and Cooper, all with 375-ml Hennessy bottles); Exh. 13 (Ricciardi swearing under oath, and Friendly approving the depositions, that he observed Plaintiff, Jackson and Harris, all with 375-ml Hennessy bottles); Exh. 26 (an outline of a 375-ml bottle showing its size). This was not true.

3

Plaintiff learned the fabricated reason the Defendants arrested her from a state court judge when she was arraigned. Exh. 1 at 115.

Though Defendants wrote summonses for Simpson, Perry, Ceruti and Cooper, they did not write summonses for Plaintiff, Jackson and Harris. They singled out these three women—the ones who had questioned their authority during the false mass arrest and use of excessive force on Plaintiff—for full custodial arrest to summarily punish them. Exh. 1 at 115 ("I just think they arrested me because I wouldn't put my phone down."); Exh. 4 at 108 (testifying about Plaintiff's objections). Ricciardi made the aforementioned false statement about the 375-bottle of Hennessy as to Plaintiff, Jackson and Harris in sworn depositions he caused to be forwarded to the district attorney's office in support of an open-container charge against each, stating as to each "I saw the defendant holding a 375 milliliter bottle of Hennessy." Exh. 3 at 94-95; Exh. 13 (swearing under oath that he saw Plaintiff, Jackson and Harris "holding a 375 milliliter bottle of Hennessy"). Ricciardi swore that he satisfied himself that the bottle he alleged to have recovered from each one of the women was alcohol. Exh. 3 at 96; Exh. 13. Friendly signed Riccardi's sworn depositions against the women as the approving supervisor. Exh. 3 at 96; Exh. 13.

Zidor released Ceruti, Simpson, Perry and Cooper from the precinct with the baseless open-container summonses. He charged them with summonses for being in the park past specially-posted hours as well. There were no such special hours posted. For his part, Ricciardi did not charge Plaintiff, Jackson and Harris were not charged with unlawful presence, and testified that he did not believe that, and did not recall whether, there was signage stating special closing hours at the entrance to the Field. Exh. 3 at 143-45.

After Plaintiff was jailed for roughly nineteen hours, a state court judge dismissed the single open-container charge against her, Jackson and Harris with ACDs after a brief colloquy about what

4

happened. Exh. 1 at 90, 111; Exh. 19. In that colloquy, the judge expressed surprise and laughed at the fact that the women were brought in on an open container charge, and Jackson stated that the officers' accusations were not true. Exh. 1 at 111-12, 121; Exh. 6 at 20. The court did not arraign them on anything else.

In 2016, in the context of this litigation, Defendants alleged that they did not push Plaintiff, Jackson and Harris through the system to summarily punish them for questioning Defendants' own misconduct. Instead, Defendants claimed that, one to two hours after the mass arrest, they ran a query to see if Plaintiff had any warrants and learned that she had one for verification of its validity.[1] Exh. 23 (Sgt. Sheehan verifying the record showing one warrant for verficiation); Exh. 24 at D310 (the query result directing that a verification number be called).[2]

Procedure required Defendants to verify that the warrant was active and not purged from the system, particularly because it began with the letter "A." Exh. 21 at PL227 (stating that an officer observing such a summons warrants "MUST conduct further inquiry" into "the last status of the warrant"); Exh. 24 at D310 (showing that it started with an "A"); Exh. 4 at 27 (Friendly testifying that his role as a supervisor requires him to verify officers' warrant results); Exh. 5 at 194 (Zidor testifying that you must call and check to see if a warrant is valid). Defendants appear not to

---

[1] Defendants previously alleged that there were two to verify, but their motion and the record show one for verification. Docket 57 at 6; Exh. 24 at D310 (single warrant query result corresponding to Docket No. 2011SQ069669); Exh. 25 at PL438 (certificate of disposition for Docket No. 2011SQ069669, which corresponds to Summons No. 4332427099); Exh. 25 at PL45-46 (Summons No. 4332427099).

[2] Defendants also claimed in the context of this litigation that Jackson and Harris's warrant query results gave results for verification as well. Defendants produced nothing in discovery to support this, and Jackson and Harris were not arraigned on anything other than a single open-container charge. The City settled their claims relating to this incident roughly three years ago.

have done this (or they did, yet arrested Plaintiff anyway), because the record shows that the warrant was not active due to the following facts: (1) Defendants forwarded no information regarding it to the district attorney's office, Exh. 8 at D212, Exh. 21 at PL230-231; (2) the state court also looked at the warrant query when Plaintiff was arraigned, but did not arraign her on it, Exh. 1 at 113, 121, Exh. 23 at ¶ 5B; (3) in at least three police warrant queries on Plaintiff since the September 2013 arrest, officers saw the same, apparently void warrant, and did not arrest her to answer for it, Exh. 24 at D311; (4) Plaintiff testified that she was unaware of the summons that allegedly supporting the apparently void warrant in the first place, Exh. 1 at 22; and (5) on April 14, 2017, Plaintiff visited state court and asked that the underlying summons be cleared, Exh. 25 at PL438.  Plaintiff was not arrested during the visit; the underlying summons was simply dismissed. Id.

Plaintiff, Jackson and Harris arrived back home on Sunday evening and set to work preparing for their childrens' first day at school, which was the next morning.  Exh. 1 at 114-15; Exh. 6 at 21; Exh. 7 at 21.

## II. Argument

### a. A Reasonable Jury Could Find False Arrest

"[T]he defendant in a false arrest case bears the burden of providing probable cause as an affirmative defense." Mitchell v. City of N.Y., 841 F.3d 72, 76 (2d Cir. 2016); Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir. 2010).  Plaintiff argues that the record presents fact issues for a jury on that question.  See Graham v. City of N.Y., 928 F. Supp.2d 610, 617 (E.D.N.Y. 2013) (finding it a jury's province to decide which party's version of the facts should be credited).  I will discuss the open container, park rules, and warrant issues in turn.

First, there is a fact issue as to Defendants' claim that they had probable cause to arrest Plaintiff for an open-container violation. See N.Y.C. Admin. Code § 10-125(b) ("No person shall . . . possess . . . an alcoholic beverage in any public place[.]". Defendants persist in their claim that they observed every single one of the seven women in actual possession of her very own 375-ml bottle of Hennessy when they walked up. However, Plaintiff testified that neither she nor any of the women possessed a container, much less every single one of them. Jackson and Harris also testified under oath at 50-h hearings that Defendants' statements were untrue. Exh. 6 at 10; Exh. 7 at 10. "This is a classic he-said-she-said dispute that is inappropriate for resolution by summary judgment because there is no unimpeachable evidence to break the tie." Cooper v. Dieugenia, 2017 WL 818367 (E.D.N.Y. Feb. 27, 2017) Jeffreys v. City of N.Y., 426 F.3d 549, 553-54 (2d Cir. 2005) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").

Defendants suggest that Plaintiff's testimony that Friendly found a discarded Hennessy bottle somewhere in the park is akin to an admission that Defendants had probable cause based on the application of constructive possession principles. But this is the very fabrication of evidence that Plaintiff is complaining about.[3]  Exh. 17. According to Plaintiff, roughly ten minutes into Friendly's search, he returned to the group with a bottle he found abandoned somewhere, which did not belong to her or any of the women, then he directed that all seven women be arrested en masse for possessing it.

---

[3] Defendants' own investigator took photographs at the scene in connection with this litigation, and documented finding a discarded bottle during the excursion. See Exh. 33.

7

Defendants cite to two cases touching on constructive possession principles in support of their open-container argument. Both cases are readily distinguishable, as they discuss the question of whether people can be found to constructively possess drugs found in their residences. See Caraballo v. City of New York, No. 10 Civ. 1885 (SJ) (RML), 2012 12883307, at *2 (E.D.N.Y. June 26, 2012), aff'd, 526 F. App'x 129 (2d Cir. 2013) (finding that officers reasonably believed that people sleeping in an apartment were the apartment's residents such that constructive possession principles applied against them); Torres v. Hanslmaier, No. 94 Civ. 4082 (MGC), 1995 WL 272527, at *2 (S.D.N.Y. May 8, 1995) (finding that a jury rationally concluded that a man possessed drugs found in his own apartment on facts that included, inter alia, the man's admission that he owned the drugs). Here, in contrast to Caraballo and Torres, Plaintiff and the six other women were in a public place where principles of constructive possession do not apply because public places are not in any one person's dominion and control. See, e.g., N.Y. Pen. Law § 220.25(2) (constructive possession presumptions apply when something is "in open view in a room, other than a public place"); see also N.Y. Pen. Law § 220.00(1) ("public place" to include parks).

In People v. Russell, 34 N.Y.2d 261, 263 (1974), the New York Court of Appeals found that police officers had no probable cause to arrest a man for constructive possession of heroin that the officers found lying three feet from the curb in an area where the man had just been talking to the driver of a stopped car, which then pulled away. According to the Russell Court, on such facts,

> [t]here is a complete absence of evidence to indicate he possessed [the heroin] at any time prior to the observations described by the officers, and certain it is that the envelope was not found in an area exclusive possession of which was in the defendant. He neither owned, controlled nor exercised any dominion, actual or potential, over the vehicle under which it was found or the general area thereof.

Id. at 26-465; see Mendez v. City of New York, 127 A.D.3d 468, 471 (1st Dep't 2016) (finding that the defendant officers had no probable cause to arrest the plaintiff for possessing a gun found in a

garbage pile when the officers did not observe the plaintiff drop the gun or any object there: "Presence in a public place does not itself prove dominion and control over contraband discovered there[.]"); Matter of Andre JJ, 202 A.D.2d 713, 714 (3d Dep't 1994) (reversing a family court finding that a juvenile had possessed crack cocaine which police officers allegedly found resting on top of an air conditioner near where the boy was sitting on his bicycle, finding that "[t]here is absolutely no evidence that [the young man] actually possessed the cocaine, which was found on a public street," and noting that he was at least 6.5 feet away from it at the time); People v. Breshnian, 133 Misc. 2d 1100 (N.Y. Sup. Ct., Crim. Term, Queens Cty., Dec. 5, 1986) (stating that a "public place" means a place to which the public or a substantial group of persons had access); see also State v. A.T.P.R., 132 Wash. App. 181, 185 (Div. 3 1986) (finding lack of evidence that the appellant constructively possessed or consumed alcohol simply because he stood near someone who actually possessed alcohol).

Next, Defendants argue that they had probable cause to charge Plaintiff with unlawful presence in a park, despite the fact that Ricciardi did not charge her with this during the arrest, and despite the fact that he testified that he did not believe or remember that there were any signs stating special hours posted at the Field. Yet according to Defendants, Plaintiff violated a park rule that [p]ersons may enter and use the parks from 6:00 a.m. until 1:00 a.m. unless other open hours are posted at [the] park." 56 R.C.N.Y. § 1-03(a)(1); Docket No. 57. Because Defendants arrested Plaintiff at about 12:20 a.m., they must establish that the park had posted "special hours" closing it earlier than 1:00 a.m. Plaintiff is entitled to summary judgment on this claim.

In U.S. v. Irving, 2009 WL 4280287 (EDNY Nov. 25, 2009), this Court held that a sign in a multi-use park stating that the basketball court closed at an hour certain did not establish probable cause to arrest the criminal defendant for being in another part of the multi-use park past that time.

"[E]ven if the sign at issue was there on July 9, 2009, its stipulated closing time pertained only to the basketball court, at the entrance to which the sign was posted, and not to the area of the park in which [the individual] was arrested." Id. at *6.  Similarly, in Cooper v. Dieugenia, 2017 WL 818367 (E.D.N.Y. Feb. 27, 2017), this Court denied summary judgment on a plaintiff's Section 1983 false arrest claim turning on the probable cause question because "the parties dispute whether there was a properly posted sign that shortened the park's hours," and "[t]hus, there remain disputed issues of fact with respect to whether [the d]efendants had probable cause to arrest [the p]laintiff for being in the park after hours, in violation of Parks Department Rule § 1-03(a)(1)."  Referring to a sign in evidence stating limited park hours, the Court stated that "even if the sign could be read clearly from the image, the image was not taken on the day of [the p]laintiff's arrest[,]" and therefore "fails to provide, even by a preponderance, that the sign was posted at the park the night of [the p]laintiff's arret or that the sign, even if it was there, was visible to [the p]laintiff or the officers, or in legible condition." Id. at *4.

Taking Irving, Cooper, 56 R.C.N.Y. § 1-03(a)(1), and related law together, Defendants have not adduced any evidence that a reasonable jury could plausibly find shows that "special hours" were posted at the Field making Plaintiff's presence there at 12:20 a.m. unlawful.  Relevant considerations include, but are not limited to:

- Whether allegedly posted signage setting "special hours" was installed at a location corresponding to the public place where it was applied, or that its installation reasonably noticed the public that it did.  Here, Defendants submit that signage was installed on an enclosure surrounding children's playground equipment in the multi-use area, and not the Field. Exh. 14 at 26.  Irving and Cooper hold that this is legally insufficient.  The record shows that the entrance to the baseball field where Plaintiff and Defendants testified they entered has no sign stating the park's hours. Exh. 27; Exh. 6 at 12-13 (Jackson testifying there was no sign); Exh. 7 at 13 (Harris testifying that she saw no signs).  The adjacent entrance to the Field is devoid of any "special hours" signage, either, and a sign actually on the Field says nothing about "special hours." Exh. 30; see Uzoukwu v. Krawiecki, 2016 WL 6561300 (S.D.N.Y. Nov. 4, 2016) (noting the location of park signage vis-à-vis the

children's play area where the plaintiff was actually arrested as relevant to a jury's probable cause determination).

- Whether the alleged signage setting "special hours" was actually installed at the time of arrest.  At best, Defendants submit that a jury should infer that because the playground-equipment sign was posted in August 2013, it was there at the time of Peeples's arrest.  Exh. 15.  However, a Parks Department inspection report at the playground-equipment area suggests this would not be a reliable inference, as the report states that the sign was outdated and needed to be replaced, with a photograph zoomed in on its special closing hours.  Exh. 17 at D191, D199.

- Whether the alleged signage's alleged reasonable notice was contradicted by other signs or information.  Here, the record shows that signage actually on the Field summarizing park rules did not set any "special hours."  Exh. 29.  Plaintiff testified that she has never known that part of the park to close because there are no gates or signs restricting access and because the community regular uses it day and night as a pedestrian shortcut to residences, Exh. 28 (photograph taken by Plaintiff's Counsel of people using the Field as pedestrian shortcut), and the New York City Parks Web site states that the park is open twenty-four hours, Exh. 16; cf. Marlin v. City of N.Y., 2016 WL 4939371 (S.D.N.Y. Sept. 7, 2016) (noting that the plaintiff admitted that he had been told that the park had closed).

- Parks Department employee Anita Campbell testified that during her August 2013 inspection of the park, she observed only two "consolidated signs" (signs that contain park rules, and which would note special hours) on the premises.  Exh. 14 at 21-22; Exh. 15 at D46.  The first of these was next to the children's playground equipment area—which has its own specific enclosure—and this sign said that the children's playground equipment area closed at 9:00 p.m.  Exh. 14 at 26; Exh. 15 at D49 (upper left photo).  Campbell could not remember about the location of the second consolidated sign or its content, although she did remember that she recommended to the department that another consolidated sign be installed at the park.  Exh. 14 at 23, 34-35, 38-39 (testifying that not all consolidated signs have the same content, and that the content varies according to the area the consolidated sign is posted at in a park); Exh. 15 at D46.

In light of the foregoing, the record shows an absence of any evidence that a sign setting "special

hours" reasonably noticed Plaintiff that she was unlawfully present at the bench on the Field due to

early closing, and Plaintiff seeks summary judgment on this issue.

Defendants' third and final argument on probable cause to arrest Plaintiff relates to their

claim that, roughly one to two hours after they transported the women to the precinct, they

discovered that Peeples had a bench warrant relating to a summons.  There being a fact issue as to

whether Defendants discovered the bench warrant until 2016, after this litigation was filed, this bare

assertion fails to entitle Defendants to summary judgment on probable cause.  As discussed above, Defendants reported no bench warrant to the district attorney's office or court when Plaintiff was arrested.  Exh. 8.  At the same time, the NYPD Patrol Guide directs that officers must verify whether an "A" (summons) warrant has not been purged before they may arrest someone on it, and then directs that if the warrant is found to be valid and such arrest occurs, the arrestee must be arraigned on it.  Exh. 21.  Plaintiff was not arraigned on anything other than one false open-container charge apiece, which the state court dismissed on ACD.  The absence of Defense records relating to the alleged warrant creates an issue of fact as to probable cause on that question.[4]  It was not until more than three years later, on April 14, 2017, that Plaintiff cleared the warrants herself on a visit to state court to make the request.  Exh. 25 at PL438.  In light of Defendants' failure to produce the actual warrant in discovery, the fact that the court and other officers who looked at the warrant all treated it as inactive and did not arraign/arrest Plaintiff, reasonably supports that the alleged warrant was not active.  See East Coast Novelty Co., Inc. v. City of N.Y., 809 F.Supp. 285, 297 (S.D.N.Y. 1992) (denying the defendant's summary judgment motion when evidence showed a fact issue as to whether defendant's claimed reliance on third party information was, in fact, reasonable reliance).

Assuming, arguendo, that the Court finds that Defendants have probable cause based on the claimed warrant, the fact that Defendants had already falsely arrested Plaintiff some time before the

---

[4] Again, Plaintiff contends that Defendants placed her, Jackson and Harris under full custodial arrest as summary punishment for asking questions about Defendants' misconduct, while their quieter co-arrestees were released from the precinct with summonses.  Plaintiff acknowledges that a Defendant's subjective state of mind is irrelevant to the probable cause determination, but she is not arguing that Defendants maliciously arrested her on valid warrant; she is arguing that Defendants arrested her on a purged warrant they knew was not active.

12.

warrant's discovery means that the observation bears on false arrest damages, not liability. See Jenkins v. City of N.Y., 478 F.3d 76, 87 (2d Cir. 2007) (stating it is an officer's knowledge "at the time of arrest" that governs the probable cause inquiry). In Suss v. American Society for Prevention of Cruelty to Animals, 823 F. Supp.181, 192 n.23 (S.D.N.Y. 1993), the Court noted that "Fourth Amendment standing can protect innocent victims of illegal searches or seizures who cannot take advantage" of evidentiary exclusions to vindicate their rights, and noting the role of damages claims under such circumstances. See Wilson v. City of N.Y., No. 06 Civ. 0229 (ARR) (VVP), 2010 WL 3585906, at *7 (E.D.N.Y. Sept. 7, 2010) (noting that a genuine issue of material fact exists on a false arrest claim where evidence shows that the police did not develop probable cause to arrest the plaintiff until after his formal arrest); Brome v. City of N.Y., 2004 WL 502645, at *4 n.3 (S.D.N.Y. Mar. 15, 2004) (denying summary judgment, noting that the arresting officer was admittedly unaware that the plaintiff was the subject of a warrant "at the time of arrest," and explaining that it is not the issuance of the warrant that "triggers . . . [a] corresponding loss of Fourth Amendment protection," and that the triggering event in that case was the execution of the warrant after the plaintiff's arrest) (citing Moody v. Daggett, 429 U.S. 78, 86 n.7 (1976)).[5]

In the event that the Court agrees with Defendants' argument that false arrest liability is comprised by arguable probable cause, these same facts give rise to an alternate deprivation of fair

---

[5] Defendants cite to a summary order from the Seventh Circuit in Banks v. Fuentes, 545 F. App'x 518 (7th Cir. 2013), for the proposition that arresting officers can rely on an open warrant they had no idea existed until well after an unprivileged arrest is made to provide retroactive probable cause for that otherwise unlawful arrest. Setting aside that there is controlling law that suggests the contrary, see supra, the Seventh Circuit's Rule 32.01 states that the issuing court does not consider its summary orders to have precedential value. See 7th Cir. R. 32.1(b).

13

trial claim.[6] "No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee." Ricciuti v. City of N.Y., 124 F.3d 123, 130 (2d Cir. 1997). Thus, Defendants' efforts to immunize themselves from civil rights liability for making false statements through probable cause is unavailing on a fair trial claim because, in that context, probable cause is no defense. See Jovanovic v. City of N.Y., 486 F. App'x 149, 152 (2d Cir. June 20, 2012); Rucks v. City of N.Y., 96 F. Supp.3d 138, 149 (S.D.N.Y 2015) (rejecting that only fabricated physical evidence or confessions are actionable); see also Coggins v. Buonara, 776 F.3d 108, 113 (2d Cir. 2015) (stating that an officer's false statements are actionable).

As discussed, supra, this record presents a clear fact issue as to whether Defendants forwarded fabricated statements to prosecutors that they observed every single one of the women— Peeples included—in possession of her very own open 375-ml bottle of Hennessy. This fabrication related to the singular arrest charge actually brought against Plaintiff, and was plainly likely to influence a jury's decision on the material question of whether she possessed an open container. The fact that Plaintiff accepted an ACD is of no moment, and fair trial and false arrest damages are not duplicative. See Bryant v. Serebrenik, 2016 WL 6426372, at *8 (E.D.N.Y. Oct. 28, 2016) (noting that if the plaintiffs' false arrest claims were defeated on probable cause or qualified immunity defenses, but not their fair trial claims, the plaintiffs would still be permitted to damages on the latter); Keller v. Sobolewski, No. 10 Civ. 5198, 2012 WL 4863228, at *4 (E.D.N.Y. Oct. 12,

---

[6] If Defendants argue that Peeples would need to amend her complaint to add such a claim, Peeples moves the Court to so amend pursuant to Rule 15(b)(2), as the claim arises from the same set of facts developed herein. See Fed. R. Civ. P. 15(b)(2) (noting that a party may move at any time, even after judgment, to amend the pleadings to conform them to the evidence and to raise an unpleaded issue).

14

2012) ("[N]o precedent exists, in this circuit or otherwise, for dismissing a § 1983 claim for [fair trial deprivation] in light of a plaintiff's acceptance of an ACD."); <u>Dowling v. City of N.Y.</u>, No. 11 Civ. 4954, 2013 WL 5502867, at *7 (E.D.N.Y. Sept. 30, 2013) (stating that the plaintiff's twenty-four hours of detention were potential fair trial damages).   In this case, the fair trial violation corresponded to the singular charge for which Defendants actually did cause Peeples' nearly day-long deprivation of liberty in September 2013 (having not submitted any paperwork relating to the alleged warrant), and a court need not "require the jury to apportion damages" among various overlapping the constitutional tort theories. <u>See</u> <u>Bryant</u>, 2016 WL 6426372, at *8 (citing <u>Davis v. Velez</u>, 797 F.3d 192, 213 (2d Cir. 2015) (finding that even if malicious prosecution claims were dismissed, and a fair trial claim survived, "there would be no basis on which to overturn the verdicts against [the defendants] for denial of a fair trial or to find that the damages awarded were impermissible with respect to the fair trial verdicts").

### b.  A Reasonable Jury Could Find Excessive Force

In <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989), the Supreme Court held that "whether the force used to effect a particular seizure is 'reasonable' . . . requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."   Applying this principle, the Second Circuit in <u>Atkins v. City of New York</u>, 143 F.3d 100, 104 (2d Cir. 1998), held that a police officer could not have "used reasonable force" against a plaintiff for whom there was no probable cause to arrest. <u>See</u> <u>Black v. Town of Harrison</u>, No. 02 Civ. 2097, 2002 WL 31002824, at *6 (S.D.N.Y. Sept. 5, 2002) (When arrest unlawful, "any degree of force is unreasonable and excessive."); <u>Budgar v. State</u>, 98 Misc. 2d 588, 592 (N.Y. Ct. of Claims, Mar. 8, 1979) ("Any use of force during . . . unlawful arrest is actionable.").

Defendants insist that excessive force claims fail as a matter of law whenever a plaintiff's force-related injuries are de minimis. This is not the law under Graham. In Lemmo v. McKoy, No. 08 Civ. 4264 (RJD), 2011 WL 843974, at *4 (E.D.N.Y. Mar. 8, 2011), this Court held that even though the plaintiff had not suffered serious injury when officers gratuitously twisted his thumbs (a fact which calls to mind Defendant's wrenching of Plaintiff's wrist here), "a jury, citizens of this city, should decide whether an officer or officers, sworn to protect and serve the community, failed to deliver on their professional vow" by using force without justification. See Atkins, 143 F.3d at 104 (noting that the degree of injury is relevant to damages, not liability); Budgar, 98 Misc. 2d at 592 (same); see also Best v. Nurse, No. 99 Civ. 3727 (JBW), 1999 WL 1243055, at *7 (E.D.N.Y. Dec. 16, 1999) (Judge Weinstein declining to dismiss the plaintiff's false arrest or excessive force claims, stating that until the false arrest claim was resolved, it was not possible to know "the objective reasonableness of the officers' conduct or the injury" for the purposes of the force analysis). More importantly, the Peeples force claim goes beyond the de minimis handcuffing that Defendants cite Milo as permitting. Her testimony regarding Ricciardi's intentional and unjustified twisting of her wrist while she was sitting on a bench looking at her telephone in the context of a baseless mass detention raises issues of fact regarding the various factors that Graham holds relevant to a force claim, i.e., "the nature and severity of the crime leading to the arrest," "whether the suspect poses an immediate threat to the safety of the officer or others," and "whether the suspect was actively resisting arrest or attempting to evade arrest by flight." See Graham v. City of N.Y., 928 F. Supp.2d 610, 617-18 (E.D.N.Y. 2013) (citations & quotations omitted); see Nimkoff v. Dollhausen, 751 F. Supp.2d 455, 463 (E.D.N.Y. 2010) ("[T]he fact finder must consider the totality of the circumstances . . ." in weighing whether an officer's actions were objectively reasonable.).

16

### c. *A Reasonable Jury Could Find Failure To Intervene*

A failure to intervene claim requires that an officer have had a realistic opportunity to intervene so as to prevent or stop the violation of Ms. Peeples's rights, yet did not take reasonable steps to intervene. See Jean-Laurent v. Wilkinson, 540 F. Supp.2d 501, 512 (S.D.N.Y. 2008). Here, Defendants argue that Plaintiff cannot claim that Defendants falsely arrested her while also failing to intervene to prevent it, citing Salazar v. City of N.Y., 2016 WL 3748499, at *7 (S.D.N.Y. July 11, 2016). However, in Salazar, the Court held that the plaintiff could not allege that the one defendant who falsely arrested her also failed to intervene to prevent it. Id.

Here, in contrast to Salazar, the record shows that all three Defendants played different, active roles in the false mass arrest at different times. For example, a jury could find that Friendly initially directed the mass arrest of the women after, and perhaps in response to, the fact that Ricciardi had already used force upon Peeples. Zidor then actively contributed to the mass arrest by making false statements against Peeples' co-arrestees, which a jury could plausibly find was intended to bolster the Peeples false arrest. As a consequence of Defendants' factually intertwined personal involvement in the mass arrest, a jury could properly find that each Individual Defendant's personal involvement rose to the level of some degree of proximate causation (in which case the jury would apportion damages between them), and that the Individual Defendants failed to intervene to prevent some other aspects of the violation proximately caused by their co-Defendants.

Peeples concurs with Defendants that she cannot claim that Riccardi used force against her while failing to intervene to prevent it, and she withdraws that failure to intervene claim.

### d. *A Reasonable Jury Could Find Monell Liability*

A reasonable jury could plausibly find a Monell violation relating to the City Defendant's deliberate indifference to Defendant Friendly's pattern of constitutional violations in his

performance of his duties.  "To prove such deliberate indifference, the plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious."  Vann v. City of N.Y., 72 F.3d 1040 (2d Cir. 1995).  "An obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents."  Id.

Here, between 2009 and 2014, civil rights plaintiffs sued Defendant Friendly for violating their constitutional rights roughly sixteen times in the EDNY and SDNY.  See Exhs. 32-33, 34-44 (collecting Vanbuckley, Rojas, Glenn, Baxton, Chapman, Racks, Hunter, Hutson, Richburg, Johnson, Gregory, Blackett, Thompson, Jackson, Simon).

As noted in some of the parenthetical citations below, the allegations made against Defendant Friendly in many of these cases are similar to the ones mades against him here by Peeples.  They have also cost the City sizable sums.  Rather than address the fact that Friendly is chronically violating the constitutional rights of individuals he comes into contact with while on the job, the City Defendant has chosen for years to subsidize his misconduct.  See Vanbuckley (settling multiple plaintiff's Fourth Amendment false arrest and unlawful search claims for $35,000); Rojas (settling plaintiff's false arrest and other claims for $10,000); Glenn (settling the plaintiff's false arrest and excessive force claims against Friendly for $15,000); Baxton (settling the plaintiff's false arrest and unlawful search claims for $30,000); Chapman (settling the two plaintiff's false arrest and malicious prosecution claims for $40,000); Racks (unknown disposition of the plaintiff's false arrest and excessive force claims—the case may have been dismissed after the plaintiff's death); Hunter (settled for undisclosed sum); Hutson (dismissal); Richburg (jury verdict in the amount of $75,000 on the plaintiff's false arrest, malicious prosecution and excessive force claims);  Simon

(settled for undisclosed sum); <u>Johnson</u> (dismissal with possible settlement on allegations of false arrest and excessive force); <u>Gregory</u> (dismissal with possible settlement of <u>pro se</u> allegations of false arrest and unlawful search); <u>Blackett</u> (settling the plaintiff's false arrest and force claims for undisclosed sum); <u>Simon</u> (settling the <u>pro se</u> plaintiff's force claims for undisclosed sum); <u>Thompson</u> (settling the plaintiff's false arrest and unlawful search claims for an undisclosed sum); <u>Jackson</u> (dismissal).

In one of the more recent cases, <u>Richburg</u>, among the plaintiff allegations was that Defendant Friendly falsely stated that the plaintiff punched Friendly in the face, which evidence was forwarded to prosecutors in connection with the plaintiff's false arrest. <u>Richburg</u>, No. 12 Civ. 5590 (LDH) (VMS). A jury returned a $75,000 plaintiff's verdict.

By the time Friendly violated Plaintiff's rights in September 2013, the City was on ample notice of the vast majority of the above-cited cases. Plaintiff argues that any reasonable employer would have viewed this degree of misconduct as requiring prompt emergency efforts to train, supervise and/or discipline the subject employee. Instead, here, the City, starting in 2013, entrusted Friendly with sergeant status (he has previously been a detective) and supervisory power so that he could shape police officers working under him at PSA 9 into a similar mold. <u>Exh. 4</u> at 14-15. As a sergeant, Friendly "provides guidance" to his officers by making suggestions to them about their performance, answering their questions, directing them about compliance with departmental protocols, and approving their decisions such as when an arrest is justified. <u>Exh. 4</u> at 18-21. Notably, another part of Friendly's duties is to verify his arresting officers' warrant checks. <u>Exh.4</u> at 27.

In light of the foregoing, Plaintiff respectfully argues that a reasonable jury could plausibly infer that the City Defendant's deliberate indifference toward Friendly's record proximately caused the constitutional violation that Friendly inflicted upon her on September 9, 2013.

I will separately ask the Court for permission to submit confidential supplemental material under seal in additional support of Plaintiff's Monell claim.  However, Plaintiff respectfully argues that the volume of federal lawsuits against Defendant Friendly by itself provides a factual basis to permit a jury to consider Monell liability here.

**III. Conclusion**

In light of the foregoing, Plaintiff respectfully asks the Court to deny Defendants' summary judgment motion in its entirety.

Dated:      June 5, 2017
              New York, New York

Ryan Lozar
*Attorney for Plaintiff Katrina Peeples*
305 Broadway, 10th Floor
New York, New York 10007
(310) 867-1562

20